SHIELDS ET AL v. ALSTON.

1. The statute is explicit in requiring the next of kin to be informed of an applica-
tion for the probate of the will of a deceased relative, and only allows it to be
heard and determined without notice, where there is no kindred resident in the
State : and a revising Court will not intend that the next of kin are non-residents,
in the absence of any statement or proof to that effect in the record.

2. The recital in the record in respect to the admission of a will to probate, that
" due and proper notice was given to the next of kin of the testator," will not
authorize the conclusion that one of the next of kin then in his minority, had
been legally notified, or waived notice—there being no notice in the record, and
he being incompetent to dispense with it.

3. Where a paper is propounded for probate as a will, and the parties interested in
defeating it, produce a testamentary paper of a later date, it is the duty of the
Orphans' Court, under the statute of this State, mero motu to cause proceedings
to be instituted for the purpose of trying the validity of the latter, and determin-
ing whether it shall operate as the testator's will. And the Court cannot assume
that the first paper has never been revoked, because the second has not been
formally offered for probate.

On the 10th May, 1841, the defendant in error propounded
for probate, to the Orphans' Court of Marengo, a paper pur-
porting to be the last will and testament of Polly Glover, late
of that county deceased, of which he was appointed executor.
Thereupon citations were issued to John O. Glover, Benjamin
G Shields and Benjamin Glover—the former was returned
"executed," and the two latter returned "not found." On
the 24th of May, citations were again directed to issue for
Shields and B. Glover, which were regularly served—at the
same time Leroy W. King was appointed a guardian *ad litem*
for certain infant children of J. O. and B. Glover, (mentioned

by name,) who were interested in the establishment of the will, and a citation directed to issue to him. In the record here is a waiver of service of citation by Nicholas W. Hobson, one of the legatees, as a guardian of his children and in right of his wife.

B. G. Shields and B. Glover appeared to contest the validity of the will sought to be admitted to probate; and thereupon an issue was submitted to a jury, who, by their verdict, declared that the paper propounded is the last will and testament of Polly Glover, deceased; and thereupon an order or decree was rendered that letters testamentary issue to the defendant in error, as executor, upon giving bond and taking the oath as prescribed by law. The entry recites that due and proper notice was given to the next of kin of Polly Glover, deceased, and the cause was regularly before the Court, &c.

On the day of trial, but before the same was entered upon, the contestants, by their agent. made an affidavit, setting forth with particularity, that they could prove by two absent witnesses, (whose names are mentioned,) that Mrs. Glover made another and a later will than that sought to be established. It was admitted by the defendant in error, that the absent witnesses would testify to the facts stated in the affidavit for the contestants, and the same was allowed to be read to the jury, instead of submitting to a continuance in order to obtain their personal attendance. Shields, in order to contest the paper offered for probate, proposed an issue in three distinct forms:

1. He denied that it was the last will and testament of Mrs. Glover.

2. He averred that since the time when the writing in question purports to have been executed, Mrs. Glover made and published and declared her last will and testament, and thereby revoked and annulled all other and former wills and testaments by her made, &c

3. He insists that the paper ought not to be admitted to probate, because he says that on the 22d April, 1841, Polly Glover made and executed a certain instrument in writing, in substance as follows:

[Here follows the copy of a testamentary paper, purporting to be made by Mrs. Glover, disposing of all her property and revoking all former wills.]

32

Th.s writing is not signed by Mrs. G. in consequence of her inability to write her name, but she gave to it her sanction and assent in the presence of four persons, who attest the fact by subscribing their names as witnesses.

The Court overruled the issues tendered, on the ground that the writing offered by the defendant in error was the only paper that then was, or ever had been, before the Court, purporting to be the last will and testament of Polly Glover—and that the paper set up by Shields as a will, was not in Court or offered for probate according to the statute. To which decision the contestants excepted, &c.

The contestants then offered to read to the jury the depositions of the subscribing witnesses to the paper set up by Shields as the last will of Mrs. Glover, but the defendant in error objected to their admission on the ground that that writing purports to be the last will of the testator, and as it had not been offered for probate or legal notice given to the next of kin of the deceased, it was not competent for any person to use it as a mere revocation of a former will—but the parties who set it up were bound to file it for probate before it could operate as such. Thereupon the depositions were excluded, and the contestants excepted.

To revise the order or sentence of the Orphans' Court, the contestants have sued a writ of error to this Court.

MANNING, with whom was Mr. LYON, for the plaintiff in error. All the parties in interest should have been brought before the Orphans' Court, and its course of proceeding being summary, the record should show a compliance with the statutes under which it acted. [7 Poter's Rep. 274.] It is not enough that the entry recites that "due and proper notice," was given, &c. but it must be shown to whom, and when, it was given. [Minor's Rep. 25.]

It was irregular to appoint a guardian *ad litem* for some of the infants who are interested, and to summon him without notice to the infants themselves. [1 Ala. Rep. N. S. 390.]

The heirs of John Shields who appear to be interested in both the papers set up as wills, should have been brought before the Court.

The evidence offered to sustain the will set up by Shields

was competent and should have been received.    If that will was not regularly offered for probate, it was the duty of the Court *mero motu* to have ordered it to be filed—to continue the cause, that the validity of both the papers might be examined and complete justice administered.    The Orphans' Court proceeds *in rem* and takes cognizance of every case of testacy or intestacy, without waiting for its action to be specially sought.    [Aik. Dig. 251-2; Wyman et al v. Campbell, 6 Porter's Rep. 232.]

The issues in the form tendered by B. G. Shields, should have been received and submitted to the jury.

It cannot be objected that the paper set up by the contestants was invalid as a will of the personalty, whether it may be under the statute of frauds a will of land, is another question.    A writing, purporting to be a will of real and personal estate, but defectively executed as to the former, is nevertheless good as to the latter.    [2 Ves. Rep. 665; McGrew v. McGrew, 1 S. and P. Rep. 30.]    And such is the law notwithstanding there be a previous will disposing of both the real and personal property.    [2 Ves. Rep. 665; Cogbill v. Cogbill, 2 Hen. & Munf. Rep. 510.]

MURPHY and W. G. JONES, for the defendant.    Our statutes which relate to the contestation of wills are found in Aik. Dig. 249, 177, 250, 449, 450, and do not require that the record should show that all the parties in interest were before the Court.    It will be presumed, if the reverse do not appear, that the proper parties were cited.    [McGrew v. McGrew, 1 Stew. and P. Rep. 30.]    Citation is unnecessary if it appear that the parties in interest have had notice.    [Aik. Dig. 251, §29.]    The recital in the record states that "due and proper notice had been given to the next of kin," and also that citations had been served on the legatees.

The paper offered by the contestants as a will, was attempted to be used merely as a revocation of that offered for probate, but not being executed in conformity to law, it could not thus operate, and was on this ground properly rejected.    [Laughton v. Atkins, 1 Pick. Rep. 535; Reid et ux v. Borland, 14 Mass. Rep. 208; Onions v. Tyrer, 1 P. Wm's Rep. 343; 1 Wm's Ex. 81; 3 Starkie's Ev. 1713, and cases there cited.]

As to the issues tendered by Shields, they were so far as legal, substantially embraced by the issue that was tried, and their rejection, even if an error at all, was entirely harmless, and cannot here avail.

In England wills are proved in common form, or in solemn form *per testes.* In the former no citation to the next of kin is necessary—in the latter it is essential.  [1 Wm's Ex. 188.] As to the effect of proving when all the next of kin are not cited, and how and by what tribunal it may be revoked. .[See 1 Wm's Ex. 194; ib. 347, 358, 359, 360.]  If notice was not given to all the proper parties, it may be an error in fact, for which probate may be revoked, but the order cant be here reversed.

The Orphans' Court should not *mero motu* proceed in every case of testacy or intestacy which may occur in the county, but only when applied in the manner prescribed by statute; and as the paper set up as the last will was not propounded for probate, the Court should not have directed it to be filed, that its validity might be examined.

COLLIER, C. J.—By the eighth section of the act of June, 1821, it is enacted, that on application for the probate of any will, the Clerk of the County Court shall issue a citation, requiring the sheriff to summon the widow or next of kin of the deceased to appear at some return day in the process named, (or appear at the next stated session,) and show if they have any thing to alledge against such application, &c., or on satisfactory proof that the deceased has no widow or kindred resident in the State, the application may be heard and determined; the Court at any stated session may hear and determine such application though no citations may have been executed or issued, on proof of reasonable notice thereof, or on proof that the deceased has no widow or kindred resident in the State.

This enactment is very explicit in its terms in requiring the next of kin to be informed of the application for the probate of the will of a deceased relative, and only permits it to be heard and determined without notice when there is no kindred resident in the State.

It is inferrable from the record that the testratrix had kin-

dred who were not brought before the Court by citation, who in the event of its being adjudged, that she died intestate, would be entitled to share in the property she left. Without attempting particularly to designate them all, it may be sufficient to mention the father and mother of her deceased grand-son, John J. Shields, if living, and if they were dead then William, the son of John J. Shields, as one of the next of kin. It does not appear that this party resides without the State; and such cannot be intended to be the fact in the absence of a statement or proof to that effect in the record, so that although the application for the probate may have been determined at a "stated session" of the Court, yet the omission to serve him, with a citation would be fatal to the proceeding. The recital in the order of the Court below, that "due and proper notice was given to the next of kin of Polly Glover, deceased," does not warrant the conclusion that William Shields was duly notified, or waived notice. The record contains no citation that was served on him; and being in his minority he could not dispense with the legal mode of being brought before the Court.

Whether the children of John O. Glover and Ben. Glover, should be regarded as of the next of kin to the testatrix, within the meaning of the act cited, as their parents were more nearly related is a question which need not be considered. But if they were necessary parties in analogy to the course of proceeding in Chancery, it would seem that they should have been first served with citation before a guardian *ad litem* was appointed. [Walker et al v. Hallett, 1 Ala. Rep. 379.]

2. The granting of letters testamentary and of administration pertains to the County Court sitting as an Orphans' Court, or Court of Probate. [Act of 1806, Aik. Dig. 248-9.] And the Judge of that Court is invested with jurisdiction, within his county, *either in open Court or in vacation* to take the probate of wills, grant and repeal letters testamentary and letters of administration, &c. [Ib. 251. "If any of said Judges shall be informed that any will, whereof he is competent to take the probate, is in possession of any person, such Judge may order a citation to issue, returnable as in other cases, requiring the person so charged, and all others who may have possession of such will, to produce the same before him, at or before the re-

turn day of such process; and on its being duly certified by proof, that any person or persons on whom such process has been executed, conceals, or improperly delays to produce such will, such Judge may commit him, her or them to jail, to remain in custody until the will shall be produced, and may make such other orders as may seem necessary in the case." [Aik. Dig. 252 ; see also ib. 450.]  *Further*, before issuing letters testamentary, the Judge shall administer to the executor or executrix an oath, as follows, viz:  "You swear that the writing which has been admitted to be recorded as the last will of ———— contains the true last will of ————," &c.  [Aikin's Dig. 177.]

These several statutes clearly show, that the Orphans' Court is authorized to exercise a very extensive jurisdiction over the estates of deceased persons; that the Judge thereof may either in open Court or vacation, take the probate of wills, and grant or repeal letters testamentary.  He may also coerce the production of a will of which he is competent to take the probate. This being the case, it would be strange if he could not *mero motu*, subject to judicial action a will which was brought before his Court without compulsory process, unless he was asked to permit it to be proved.  The very object of requiring its production, is to ascertain its validity and cause it to be executed, if it was the last legal expression of the intentions of the deceased.

When, then, a will is exhibited to the Orphans' Court bearing a later date than one which is offered for probate, and contended to be the last will of the testator, it is the duty of the Court to pause and require a contestation of the facts, that it may be understandingly determined which should be established.  The Court is not obliged to remain quiescent, for it is provided by statute, that when the validity of any will shall be contested, or doubts may arise as to its validity, or as to any fact which, in the opinion of the Judge, it may be necessary to have ascertained by the verdict of a jury, before awarding any order, judgment or decree, such Judge, at any stated session, or on any sitting held in vacation, may forthwith cause a jury to be summoned and empannelled to try such issue, or inquire of such facts as, under his direction, shall be submitted to their decision.  [Aik. Dig. 251.]  Besides, although the executor

might believe that the will of the earliest date was operative, the Judge should not administer to him the oath prescribed by statute, until the validity of the last was tried.

It is not necessary to a decision of the present case to consider whether the will set up by the plaintiffs in error, operated a revocation of the first as it respected the lands of the testatrix; since it is settled that a will which disposes of the real and personal estate may be good as to the personalty, though it is not executed so as to pass the realty. [McGrew v. McGrew, 1 Stew. and P. Rep. 30; see also 2 H. and Mun. Rep. 506; 4 Ves. Jr. Rep. 200, notes A. and B.; 1 Pick. Rep. 239; 4 Whea. Rep 91, note; 1 Call's Rep 479: 1 Bro. Ch. Rep. 147; 2 Ves. Jr. 665; Toller's Ex. 379; 1 Cox's Ch. Rep. 240; Roberts on Frauds, 327, 362; 2 Ld. Raym. Rep. 1282; Comyn's Rep. 453; 1 Eq. Cases Ab. 408; 1 Roberts on Wills, 151.] Nor is it essential to a will of personal property, that it should be signed or sealed by the testator and attested by subscribing witnesses; although it be written by another, if shown to have been approved by him, or written agreeably to his instructions, it is entirely sufficient. [1 John. Ch. Rep. 153; 1 Call's Rep. 479; 1 Dall. 266, 286; 1 Roberts on Wills, 27, 28, 148, 150-1-2-6; Toller's Ex. 3, 14, 58; Comyn's Rep. 452; 2 Bla. Com. 501-2 and note; 2 Nott and McC. Rep. 531; 1 Merivale's Rep. 501.]

We might here close this opinion, but as the defendant in error insists that Laughton v. Atkins, [1 Pick. Rep. 535,] leads to a different conclusion than that we have attained, we will give to it a brief consideration. That was an appeal from a decree of the Judge of Probate approving an instrument dated in 1819, as the last will and testament of Sarah Badger. The main ground of appeal was, that in 1821, the testatrix, by an instrument duly executed by her, cancelled and revoked the writing established as her will. It appeared that the instrument of 1821, purported to be a disposition of all the real and personal estate of the testatrix, and in express words revoked all former wills—that it had never been approved as a will, but on the contrary upon being offered for probate was adjudged null and void, because it was procured by undue influence and persuasions, and false representations of the appellee's conduct. The Court held that the decree against the validity of the instrument of 1821 was conclusive; that being inopera-

tive for the primary object, viz: to dispose of property it was ineffectual as a revocation, which was a secondary purpose, because it could not be known that the testator intended to revoke the will of 1819 unless that of 1821 was allowed. It was admitted that there are cases where a will is inoperative from circumstances *dehors*, it may notwithstanding be set up as a revocation ; as where the legatee is incapable of taking. The Court thought it competent to prove a will in part and disallow it as to the residue ; and that an instrument purporting to be a will with a clause of revocation could not be offered in evidence as a revocation only, without a probate ; though it was questionable whether a probate is necessary to an instrument purporting to be only a revocation.

It may be conceded that the case cited might be regarded as a correct exposition of the law in this State, without at all conflicting with the view which we have taken. It does not determine that a Court of Probate would not, where an application is made to establish an instrument as a will, inquire into the validity of one of a later date, which is produced to furnish a reason why the former should be disallowed ; but merely that a decision adverse to the latter would prevent it from operating as a revocation. We hold, that upon the production of the last instrument, our statutes require that the Court should have directed proceedings to be had with the view to ascertain whether it was the last will and testament of the testatrix. If the case in Pickering maintained a doctrine the opposite of that, which seems to us to result from our legislative acts, we should feel indisposed to conform to it, but as it does not conflict with our reasoning or conclusion it is unnecessary to consider it farther.

Other questions of a minor import were made in argument, but we deem it unnecessary to consider them—and have merely to add that the order or decree of the Orphans' Court is reversed and the cause remanded.