## SPIVEY vs. McGEHEE ET AL.

HARVARD LAW SCHOOL LIBRARY

1. In debt on bond, executed in pursuance of an order of the Chancellor, as a condition precedent to the issuing of a *ne exeat*, the condition of which is, that the plaintiff in the writ shall prosecute his suit and writ to effect, or, failing therein, shall pay or cause to be paid to the defendant "all such costs and damages as he may sustain from the *wrongful* suing out of said writ," the plaintiff can only recover for the damages *actually* sustained by the wrongful suing out of the writ, and not such damages as he might recover in case if the writ had been sued out *maliciously;* the writ may have been sued out wrongfully, and yet without malice.

2. But the plaintiff cannot recover upon proof merely that the *ne exeat* was wrongfully sued out; he must also show, that the writ was not prosecuted to effect within the meaning of the bond.

3. Error without injury will not reverse a judgment; but error raises the pre-

Spivey v. McGehee et al.

sumption of injury, and unless this presumption is repelled beyond doubt, the cause will be remanded for another trial.

4. The Appellate Court will not look to grave and doubtful questions, which are not raised by the assignment of errors, and are not connected with the question in which the error is found, for the purpose of deciding that the error did not work injury.

ERROR to the Circuit Court of Pickens.
Tried before the Hon. E. PICKENS.

The facts of this case all appear from the opinion.

RICE & MORGAN, and J. E. BELSER, for plaintiff in error:

1. In an action on the bond, for the wrongful suing out of the writ of *ne exeat*, the plaintiff is not bound to show malice, nor can the defendant rely, by way of defence, upon probable cause. Petit v. Mercer, 8 B. Monroe's Rep., 51; Cox v. Taylor, 10 ib. 17.

2. The charge of the court below is clearly erroneous, in directing the jury to "find for the defendant, unless they believed, from the evidence, that the writ of *ne exeat* was sued out maliciously." Such is not the law, when the suit is on the bond.

3. This case is much stronger in favor of the plaintiff, than the case of the mere wrongful suing out of an attachment. The attachment deprives the party of his property. The *ne exeat* deprives him of his liberty. The law values the liberty of the citizen more highly than his property.

N. W. COCKE, *contra:*

I. There is no error in the charge of the court;

1. Actions on bonds, to indemnify against the wrongful acts of the obligors, are governed by the same rules that apply to actions on the case for the injury sustained. Hill v. Rushing, 4 Ala. 212.

2. In the absence of any statute, providing for the execution of a bond and prescribing the condition thereof, as is the case here, in an action on such bond it is necessary to aver and prove malice; otherwise, the action cannot be maintained. Browne on Actions at Law, 371; Vanduzor v. Lindeman, 10 Johns. 106; White v. Dingley, 4 Mass. 433; Lindsay v.

Larned, 17 ib. 190; Williams v. Hunter, 3 Hawks, 545; Kirksey v. Jones, 7 Ala. 622; Long v. Rogers, 19 ib. 321; Garrett et al. v. Logan, ib. 344.

II. But if there be error in the record, it is error without 'injury; for the plaintiff never can recover in this action.

1. The prayer of the bill was for a writ of *ne exeat*, &c. "to seize and take into custody the body of Eli B. W. Spivey, until he deliver to the sheriff all of the said slaves in said mortgage mentioned," &c.; "unless he, the said Spivey, shall execute to your orators a bond, in a sufficient penalty, with sufficient security, conditioned according to law."

2. The recital and condition of the bond are, that, "whereas, it is ordered," &c., "that a writ of *ne exeat* do issue to restrain the said Spivey from removing beyond the jurisdiction of said court: Now, if the said complainants in said bill shall prosecute said bill and writ to effect," &c.

3. The fiat of the Chancellor directed the register, "upon the complainants, or either of them, entering into bond with three good and sufficient securities, in the sum of twelve thousand and two hundred dollars, and payable to said Eli B. W. Spivey, and conditioned according to law," to issue the process, "according to the prayer of the bill."

4. The writ issued by the register commands the sheriff to "take the body of Eli B. W. Spivey, and him safely keep in custody, until he shall deliver up into your hands the aforesaid negroes," &c., or until he enter into bail or security to the said complainants, in the sum of twelve thousand and two hundred dollars, with three or more good securities, conditioned according to law."

The latter portion, quoted from the prayer of the bill, was doubtless inserted by the pleader, under some obscure idea of the provisions of the statute, Clay's Dig. § 63, p. 355, and was not intended, nor can it be construed to mean, a *ne exeat*, to restrain Spivey from removing his person beyond the jurisdiction of the court. Nor can the alternative of the writ issued be so construed, because such a construction would render it inconsistent with the fiat. But if such be the construction, it is void, not only because it is unauthorized by the fiat, but because it is a nullity in itself. There is no law or statute, prescribing the condition or the penalty

of the bond to be given by the defendant, when arrested under a new *exeat.* The statute (Clay's Dig. § 24, p. 349) provides, that the Chancellor, by whom a *ne exeat* is granted, shall endorse thereon the sum and number of securities required from the defendant.

The writ issued, then, was simply a writ for the arrest and detention of Spivey, until he delivered up the negroes, or gave bond for their forthcoming. No other sensible construction can be placed upon the process. The bond is to indemnify against damage from the wrongful issuance of a *ne exeat,* restraining the removal of Spivey beyond the jurisdiction of the court; and the securities, at least, cannot be made liable for the issuance of a writ, or injury resulting from the execution of a writ, not embraced in the bond. Hurlestone on Bonds, 57 to 60, top page, (9 Vol. Law Library.)

DARGAN, C. J.—This was an action of debt, commenced on a bond executed by McGehee and others, in pursuance of an order of the Chancellor, granted upon the application of McGehee, as a condition precedent to the issuing of a writ of *ne exeat* against the plaintiff.

The condition of the bond, after reciting the filing of the bill, the prayer for a *ne exeat,* and the fiat of the Chancellor, proceeds as follows: "Now, if the said complainants shall prosecute their said bill and writ to effect, or, failing therein, shall pay, or cause to be paid, to the said Spivey, all such cost and damages as he may sustain from the wrongful suing out of said writ, then the bond to be void," &c. On the trial, as we are informed by the bill of exceptions, the plaintiff introduced proof tending to show, that he had sustained actual damages, and that the writ was sued out maliciously; but on this latter point the evidence was conflicting. The court charged the jury, that, unless they believed from the evidence that the writ was sued out maliciously, the plaintiff could not recover; but that they might infer malice from the want of probable cause.

If the action had been case, and not debt on the bond, no one would deny the legal accuracy of the charge. But the action is debt on a bond, the condition of which is, to pay all cost and damages that the plaintiff might sustain by wrong-

fully suing out the writ; and the question is, what will consti-
tute a wrongful suing out of the writ in the legal sense of that
term? I was strongly inclined, at first, to think the charge
was correct, and that the the term wrongful, in a legal sense,
was synonymous with malicious. But subsequent reflection
and investigation have satisfied me that it is not. The writ
may have been wrongfully sued out, although it was done
without malice. In the case of Petit v. Mercer, 8 B. Monroe,
51, the suit was debt on a bond, the condition of which was,
to pay all costs and damages for the wrongful procuring an
order upon which an attachment was issued. The defence
relied on was, that the defendant had good reason to believe
that the ground on which the order was obtained was true;
or, in other words, that he had probable cause. The Court
of Appeals of Kentucky held, that the condition was broken,
if the ground on which the order was obtained did not in
fact exist, although the defendant honestly believed, at the
time of procuring the order, that it did. They also held,
that the bond was intended as a security for the actual dama-
ges the party might sustain, but did not cover the damages
which the obligee might have recovered for issuing the at-
tachment maliciously. This authority is directly in point,
and, we think, it asserts the law correctly.

In the case before us, the bond, though not required by
statute, was given in pursuance of an order of the Chancellor,
and we must construe it in the same manner as if it had been
expressly required by the statute.

The proper inquiry is, whether the condition is broken.
To hold that it is not, unless the writ was obtained mali-
ciously as well as wrongfully, would be to limit the meaning
of the term wrongful, and, thereby, to change the condition;
for an act may be wrongful, though not malicious. Indeed,
it may have been done honestly, yet wrongfully; and if we
were to withhold the damages which resulted from the wrong-
ful issuing of the writ, because it was not issued maliciously,
we should disregard the contract, or rather, add a term to it.
It is the wrongful suing out the writ, that constitutes the
breach of the condition, without regard to the question of
malice; and the bond only covers such damages as the plain-
tiff in fact has sustained, and not such as might be allowed

on account of the malice with which the writ was issued. If the plaintiff would recover damages as for a malicious prosecution, he must sue in case; for, on the bond, he can only recover the actual damages, and they result from the act's being wrongful. Coxe v. Taylor, 10 B. Monroe, 17.

It is not to be inferred, that we intend to impugn the decisions of this court, in reference to attachment bonds, given in pursuance of our statute. Those bonds expressly stipulate for the payment of all such damages as the obligee may sustain "by the wrongful or vexatious suing out of the writ." The term "vexatious," we have held to mean "malicious;" and, therefore, we have held, that the obligors stipulate, as well against the malice with which the writ was issued, as against the act's being wrongful. Donnell v. Jones, 13 Ala. 490, and cases there cited. And had the bond in this case contained the same terms, we should give it the same construction; but as the term wrongful alone is used, malice is without the condition.

Neither is it to be understood from any thing we have said, that proof merely that the writ was wrongfully issued will, within itself, show a breach of the condition of this bond; for the condition is in the alternative, to prosecute the bill and writ to effect, or, failing therein, to pay all such costs and damages as the obligee might sustain from the wrongful suing of it out. Now, if the bill and writ had been prosecuted to effect, the condition would have been performed, and no action of course could be sustained upon it. But if the bill and writ were not prosecuted to effect, within the meaning of the bond, then the obligors are bound for all the actual damages which the plaintiff has sustained from the wrongful issuing of the writ, and he may recover them by showing that the writ was issued wrongfully.

We think it unnecessary to examine the questions growing out of the admission of evidence, to which the plaintiff objected; for, on another trial, the question of malice will be excluded, and the only legitimate evidence will be such as tends to prove or disprove the fact, whether the writ was wrongfully issued.

Let the judgment be reversed, and the cause remanded.

Spivey v. McGehee et al.

NOTE.—After the foregoing opinion had been delivered, the counsel for the defendants in error presented a petition, asking the court to consider another question, which, if decided in his favor, would show that the error in the charge of the court below, was error without injury. Mr. Cocke's argument upon this point is incorporated in his brief, which see.

DARGAN, C. J.—The rule, we admit, is established, that an error without injury will not reverse a judgment; but error raises the presumption of injury, and this presumption must be repelled beyond doubt, or we must remand the cause for another trial.

It may be also understood as a rule from which we will not depart, that we will not look to grave and doubtful questions, not raised by the assignment of errors, nor connected with the question in which the error is found, for the purpose of deciding that the error did not work injury. Such a practice would often take the plaintiff in error by surprise, and the judgment would be affirmed on questions not decided in the court below, nor argued in this court.

In the case of Armstrong v. Chastang, decided at the present term, the defendant in the court below insisted on an outstanding title to protect his possession. The court instructed the jury, that the defendant could not set it up, although such outstanding title might be perfect within itself. In this court, the defendant in error urged upon our consideration, that the outstanding title was not paramount to his, but in fact was inferior to it; but we said, that no decision was made in the court below upon the comparative merits of the two titles, and, therefore, we would not consider of them here.

So, in the case at bar, we find an error in the charge that malice was essential to the breach of the condition of the bond, and now, to avoid the consequences of this error, we are pressed to examine the writ of *ne exeat* itself, and to hold that it was void, and thus holding, to say that the error could not work injury.

We will not examine that question. It has not been decided in the court below, so far as we are informed by the

record; at all events, it is not in the slightest degree connected with the assignment of errors; and, to say the least, it is a question not free from difficulty, even if it could be decided in favor of the defendant in error. But as to this, we will intimate no opinion.

It would introduce a dangerous practice, to refuse to reverse an erroneous judgment, on the ground that the error was productive of no injury, if we were compelled, in order to determine that no injury had resulted from the error, to examine important and doubtful questions, not raised by the errors assigned, and probably not made or decided in the court below. When we refuse to reverse, because the error was productive of no injury, the ground on which we stand ought not to be open to controversy.

The application is refused.