# GILMER & TAYLOR *vs.* THE CITY COUNCIL OF MONTGOMERY.

1. If a question calls for evidence irrelevant to the issue, an objection to it is sufficient to exclude the evidence, without a separate objection to the answer.
2. In case against a municipal corporation, to recover damages for its neglect of duty in suffering plaintiff's land to be overflowed by the rain water which passed through the sewers in the streets of the city, and accumulated in a ravine emptying into the river, a witness cannot be asked, on behalf of the defendant, "if there were not other ravines in the city which had increased in size for the last twenty years in as great proportion as this ravine had increased."
3. It being shown that plaintiff had built a wall and embankment on his land, which extended partly across the ravine and narrowed the channel through which the water flowed into the river, a witness for the defence, who had been for many years engaged in building brick walls and houses, may be asked "if he did not tell plaintiff, that if he built said wall in said ravine, it would fall by reason of the flood in said ravine."
4. Where the evidence set out in the plaintiff's bill of exceptions shows that he was not entitled to recover, the court will not, on error assigned by him, inquire into the correctness of the charges given by the court at the instance of the defendant.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. ROBERT DOUGHERTY.

ACTION ON THE CASE by Francis M. Gilmer and William Taylor against the City Council of Montgomery, " to recover damages," as the endorsement on the writ states, " for defendant's negligence and carelessness in permitting the rain water to run upon plaintiffs' lots, Nos. 1, 2, 9 and 10 in square No. 2, known as the Bibb & Nickels warehouse, from —— street in the city of Montgomery, and thereby washing and undermining plaintiffs' said lots, and injuring the same."

The plaintiffs' bill of exceptions shows these facts :—

" It was in evidence, that plaintiffs bought lots Nos. 9 and 10, named in the declaration, on the 4th January, 1850 ; and that said lots lay in the city of Montgomery, at the point where Moulton and Water streets intersected. There was evidence, also, tending to show that when said lots were thus bought, a ravine existed in Moulton street, running from the

river several hundred feet back into Moulton street; that said ravine was, in part, also, upon a portion of said lots, and that it had increased on said lots, in width and depth, after said purchase, up to the summer of 1851; also, that said ravine had been commenced as early as 1833, by the wash of rain water, which naturally found its way to the Alabama river at the point where said ravine was formed; that within ten years previous to the bringing of this action, said city council had, by annual working upon the streets, and by forming ditches and filling up hollows in said city, up to the year 1851, diverted a considerable quantity of rain water, which naturally found its way into said river at other points than said ravine, into the said ravine, and had thereby increased the quantity of water which ran into said ravine through Moulton street. The defendant proposed to ask a witness on the stand, 'if there were not other ravines in the city which had increased in size for the last twenty years in as great a proportion as this ravine had increased.' Plaintiffs objected to this question, but the court overruled the objection, and allowed the question to be put; and to this the plaintiffs excepted. Witness answered, that there were.

"It was in evidence, also, that plaintiffs, some time in 1851, gave notice to said city council, that they desired to commence improving their said lots, and that said council should take steps to protect their said lots and improvements from damage by reason of said ravine and the flow of water therein in Moulton street; that said city council considered upon said notice, and, after repeated urging, appointed a committee to investigate the matter; that said committee was raised on the 23d June, 1851, and discharged on the 12th August, 1851, and did nothing but throw a little brush into the head of the ravine, which only made it worse; that in July, 1851, plaintiffs commenced filling up said ravine on their said lots, and building a brick wall on the line of their said lots, in said ravine, and built a wall, twenty-two feet high and three feet wide at the foundation, with hydraulic cement, and built it two hundred and twenty-five feet on Moulton street, and eighty feet on Water street, and made an embankment in said ravine on Moulton street, by the side of their wall, about eight feet wide, and seven or eight feet high above the bottom

of the ravine; and that said ravine was about twelve feet deep. There was evidence, also, that said work extended on the line of said lots nearly across said ravine, to within about ten feet from the bluff of said ravine, which was in Moulton street; that said bluff was as high as said wall, and that said wall and embankment narrowed the aperture in said ravine through which the water flowed. The defendant proposed to ask a witness, who had been engaged in building brick houses and brick walls for the last seventeen years, if he did not tell said F. M. Gilmer, William Taylor not being present, 'that if he built said wall in said ravine, it would fall by reason of the floods in said ravine.' Plaintiffs objected to this question, but the court overruled the objection, and allowed the question to be asked; and to this plaintiffs excepted. Witness answered, that he did tell him so.

"There was evidence, also, that about the first of September, 1851, a heavy rain occurred, and the wall was washed down, and a large quantity of earth was washed out of said lots. There was evidence, also, tending to show that plaintiffs had not quite filled up that part of said ravine on their said lots, but had filled it up some eight feet deep, leaving about three feet in depth below the level of the balance of said lots; that plaintiffs had left a gap on the top of their said wall in Moulton street, the bottom of which was five feet above the level of the surrounding earth, and that, when the wall fell, all that fell was that part included between the river on Water street and one side of that gap. The only witness who testified as to that gap, swore that the water did not rise within five feet of that gap, and that no water had flowed into the lots through that gap, and that there was a distance of twelve feet, or more, between the edge of the gap and the nearest edge of the water that ran into the lots from Moulton street. There was evidence, also, tending to show that the flood running into the ravine undermined the high bluff of the ravine, and that it fell across the ravine, and filled it up, and knocked down the wall, and that the flood poured over the broken wall, and washed out the dirt in the lots; also, that the water which fell in said lots had accumulated against the wall, and washed it down; that there were a few gullies running through said lots, emptying themselves in said ravine

when said wall was built, and that some of the water came from off plaintiffs'. warehouse.

"Upon this evidence, the defendant's counsel asked the court to charge the jury as follows:—

"1. That if plaintiffs built their wall partly across said ravine, and near the opposite bank of it, and then threw up a side-walk, six or eight feet wide and six or eight feet high, on the outside of said wall, and thereby caused the current to be forced against the opposite bank, and the same was undermined, and washed down, and fell against the said wall, and in falling knocked down the said wall,—then plaintiffs could not recover ; which charge the court gave, and the plaintiffs excepted.

"2. That if the jury believe from the entire evidence that the injury done to plaintiffs' property was effected by the plaintiffs' own acts and imprudence, then they cannot recover ; which charge the court gave, and the plaintiffs excepted.

"3. That if they believe from the whole evidence that the damage done to plaintiffs' property was effected, partly by their own acts and imprudence, and partly by the acts, negligence, and imprudence of the defendant, then plaintiffs can only recover so much damages as they have experienced by the defendant's act ; which charge the court gave, and plaintiffs excepted.

"4. That if they were unable to apportion and separate the injury done by plaintiffs from that done by defendant to said property, then plaintiffs cannot recover ; which charge the court gave, and plaintiffs excepted."

The rulings of the court on the evidence, and the several charges given, are now assigned for error.

ELMORE & YANCEY, for the appellants.

WATTS, JUDGE & JACKSON, *contra.*

CHILTON, C. J.—1. The bill of exceptions states, that upon the trial in the court below, the defendant proposed to ask a witness on the stand "if there were not other ravines in the city which had increased in size for the last twenty years in as great a proportion as this ravine had increased ;" that the court overruled the plaintiffs' objection to the ques-

tion, and allowed the witness to state that there were. The counsel for the appellee here insists, that the objection was to the question merely, and goes to its form, and not to the answer; but we think, if the inquiry was illegal and irrelevant to the issue in the cause, and was followed by an answer disclosing facts in response to it prejudicial to the plaintiffs, the question may as well be raised by an objection to the inquiry as to the answer.

2. As to the legality of the inquiry, we concur with the counsel for the appellants. We are unable to perceive what legitimate conclusion can be drawn from the washing of other ravines in the city wholly disconnected from this. If such proof were allowed, a number of collateral issues or questions would arise; for, as to each ravine which has been washed similar to this one, the plaintiffs would be allowed to show that there had been neglect or omission on the part of the city authorities to keep it in repair. Besides, there may have been various natural causes, operating with greater or less force, and calculated to produce different results: the character of the soil in different localities, the quantity of water, the swiftness of its flow in the different ravines, would, in a great measure, control the deepening or widening of them from washing. These are all lost sight of in the inquiry, which assumes that, because other ravines have increased in the same proportion with this, therefore the increase of this was not owing to the acts or omissions of the city council.

3. We do not regard the proof made by the brick-mason— namely, that he told one of the plaintiffs, if he built said wall in the ravine, it would fall by reason of the flood which washed by it—as altogether irrelevant. True, it has no very obvious connection with the issue, but, considered in connection with the other facts in the cause, it might tend to show a want of due caution, and a reckless temerity in locating the wall.

4. It is needless for us to discuss the propriety of the charges. It is very obvious, that the proof set out in the bill of exceptions fails to show either a tortious omission or breach of duty on the part of the defendant in respect of the injury complained of. The bill of exceptions says, "Upon this proof," the court gave the charges. Now, from anything which appears in the proof, the city council was under no obligation

to fill up or repair this ditch or ravine. It may have been required as an outlet for the water, and it may have been improper, if not impracticable, to have filled it up, or to have protected the wall erected by the plaintiffs. As to these matters, the bill of exceptions is silent. The ordinances passed by the city council are referred to ; but we cannot judicially notice these. We can only look to the charter and the proof disclosed by the record ; and, regarding these, we think the court might properly have charged the jury, that if they believed the proof, they should find for the defendant.

As the case must be remanded for the admission of the irrelevant proof first alluded to, we deem it unnecessary to notice the other points raised in the argument, and which will not probably again arise.

Let the judgment be reversed, and the cause remanded.