' 30 697
108 377

## POWELL'S Distributees *vs.* POWELL'S Legatees.

[CONTEST AS TO VALIDITY OF WILL.]

1. *Error without injury in sustaining demurrer to special plea.*—The sustaining of a demurrer to a special plea, in a contest respecting the validity of a will, is not an available error, when the record shows that the contestant had the full benefit of the same defense under the issue joined on his other pleas.
2. *Implied revocation of will.*—Under the Code, (§§ 1602-03,) the subsequent execution of a deed by the testator is not, *per se,* an implied revocation of a will previously made, unless the intention to revoke such will plainly appears ; especially, where the deed is liable to be set aside for fraud, or a large portion of the purchase-money is unpaid at the time of the testator's death ; and where such deed amounts to an implied revocation, but does not convey all the property embraced in the will, the will is valid as to the *residuum.*
3. *Validity of will determined by what law.*—Section 1611 of the Code, requiring two witnesses to a will disposing of either real or personal property, does not apply to a will of personalty executed before the adoption of the Code, although the testator died since its adoption.
4. *Probate on proof of testator's handwriting.*—A will, executed before the adoption of the Code, and having no subscribing witnesses, may be admitted to probate, as to the personalty, on proof of the testator's handwriting and signature, notwithstanding the paper is in a "torn and dilapidated condition," and is produced by the father of the principal legatees.

Appeal from the Probate Court of Greene.

In the matter of the last will and testament of Milton Powell, deceased, which was propounded for probate by David H. Williams, as next friend of the infant legatees, and contested by the testator's distributees and next of kin. The contestants filed four pleas, which were, in substance, as follows: 1st, that said paper was never

45

signed and published by the decedent, as and for his last will and testament; 2d, that said paper was not executed and published by said decedent in the presence of any witnesses, and no witness attested the execution of the same; 3d, that said paper was revoked by the said decedent, by deed executed on the 9th May, 1854, and attested in his presence by two subscribing witnesses; 4th, that said decedent, by deed dated 9th May, 1854, sold and conveyed the entire property devised and bequeathed by said supposed last will and testament, to Jeremiah P. Davis, in trust for his wife, Susan Davis, as her sole and separate estate, and, at the time of his death, did not hold or claim any of said property.

Issue was joined on the first of these pleas; the second was withdrawn by the contestants; and a demurrer was sustained to the third and fourth.

The testator died on the 27th May, 1854. The paper propounded for probate was dated the 1st January, 1851; purported to be signed by the testator, but was without attesting witnesses; bequeathed all the testator's slaves, except two, to the children of his brother, Samuel H. Powell; directed his lands to be sold, $1000 of the proceeds of sale to be paid to his brother Thomas Powell, and the residue to the children of his brother James E. Powell; contained a residuary clause, bequeathing "all the rest of my [his] estate not herein disposed of," to the children of his brother Samuel H. Powell; and appointed William P. Webb his executor.

On the trial of the issue, the proponents proved the testator's handwriting and signature by four witnesses, whose testimony is thus set out in the bill of exceptions:

"James Chiles testified, that he was acquainted with Milton Powell in his life-time, and on the 1st January, 1851; had seen him write frequently, and, from his knowledge of said Powell's handwriting, that the signature thereto is in his handwriting.

"William C. Oliver testified, that he was acquainted with said Powell in his life-time, and on the 1st January, 1851; has seen him write, but is not well acquainted with his handwriting; does not think that he was acquainted

with his handwriting at all on 1st January, but has become somewhat acquainted with it since; his best impression from the circumstances is, that the instrument of writing now shown to him is in the handwriting of said Powell, but he has great doubts whether or not it is in his handwriting; 'Milton Powell's will,' on the back of the instrument, looks more like his handwriting than anything he has seen.

"L. M. Minor testified, that he was acquainted with said Powell in his life-time, and on the 1st January, 1851; has seen him write, and is acquainted with his handwriting; that the instrument of writing now shown to him, both in its body and signature, is in the handwriting of said Powell. On cross examination, he further testified, that the signature at the top of the instrument resembles said Powell's handwriting more than any other part of the writing, or the other signature; does not think the signature or the instrument is in as large, round hand as said Powell usually wrote; thinks that he would have recognized the *Milton* at the top of the writing, but does not think he would have recognized any other part of it. On re-examination, he further testified, that upon looking at the words 'Powell's will,' on the back of the writing, it looks something like the handwriting of said Powell; that the difference between the signature at the top and bottom is, that the top is in a larger and fuller hand, but that the other characters of the signature are the same.

"Y. L. West testified, that he was acquainted with said Powell in his life-time, both before and after the 1st January, 1851; has seen him write, had frequent business transactions with him, and is acquainted with his handwriting; that the instrument in writing now shown to him, both in its body and signature, is in the handwriting of said Powell; and that the endorsement on it, 'M. Powell's will,' is also in his handwriting. On cross examination, he further testified, that he does not recollect any change in said Powell's handwriting, from 1851 to 1854; and, on re-examination, that his handwriting may have become less steady from his intemperate habits, but recollects no other change.

"It was admitted, as one of the facts of the case, that the paper propounded for probate was in a dilapidated condition, soiled, and seemed to be worn; had parted in two places at the top, down across the written lines, to the 8th or 9th line, apparently from having been folded and worn. A small piece was off the lower right-hand corner, taking away a part of the letters *a* and *e* in the word *seal*. Two holes had been worn about the middle of the paper, where its appearance indicated it had been folded; but there was no difficulty in making out the contents of the paper, although some letters and parts of letters were missing in the places where the paper had parted.

"William P. Webb testified, that the paper was handed to him, in the condition it then was, by Samuel H. Powell, the father of the proponents, about the — day of —, 1854; and that he renounced his right to execute the same, in open court, on the — day of —, 1854. He also stated, on cross examination, that he had never heard said Milton Powell say a word about the will, or speak of having a will; and that he had never seen or heard of this paper, until it was handed to him by said Samuel H. Powell, as above stated, at his office."

The contestants then introduced a deed, dated May 9, 1854, and attested by two witnesses, by which said Milton Powell, in consideration of the sum of $10,825, conveyed certain lands and slaves to Jeremiah P. Davis, "as trustee of Susan Davis and her heirs." "It was admitted, that the lands and slaves conveyed by this deed were the several lands and slaves mentioned and bequeathed in and by said will." The proponents then offered in evidence a decree rendered by the chancery court of Greene county, at its January term, 1856, in a suit wherein A. R. Davis, as administrator of said Milton Powell, deceased, was plaintiff, and said J. P. Davis and wife were defendants; which decree annulled and canceled the deed above described.

"This was all the evidence in the cause; and thereupon the court ruled, that the evidence was sufficient to establish the paper propounded for probate, as to the personal estate, and that the deed to Davis and wife did not revoke

the same; to which rulings of the court the contestants excepted," and which they now assign as error.

S. F. HALE, for the appellants.—1. The third plea was good, and the demurrer to it ought not to have been sustained. It was competent for the testator to have revoked his will, as the plea alleges he did, by deed attested by two subscribing witnesses.—Code, § 1613.

2. The court erred, also, in sustaining the demurrer to the fourth plea. If a testator, after making his will, conveys the whole of his property to a third person, the conveyance operates a revocation of the will; and if he sells and conveys only a part of the property, this is a revocation *pro tanto.*—1 Jarman on Wills, 168–9; Attorney-General v. Vicar, 8 Vesey, 279; Wilson v. Walton, 7 Johns. Ch. 258; 4 Barr, 88.

3. The error of the court, in sustaining the demurrer to these pleas, is not shown by the record to have been harmless. It does not appear that the contestants, on the trial of the issue joined on the first plea, had the full benefit of the matters set up in the third and fourth pleas.

4. The evidence was not sufficient to authorize the admission to record of the paper propounded for probate. The paper came from the possession of the father of the principal legatees, and was not shown to have ever been in the testator's possession, or among his papers. It was in a dilapidated condition, and showed on its face that it had not been preserved with care. These facts, in connection with the entire absence of any testimony connecting the paper with the testator, and the further fact that it gives much the larger portion of his estate to the family of one brother, to the exclusion of his other brothers and sisters, without any apparent motive, raise a strong presumption against the validity of the paper as a will; and it cannot be admitted to probate on proof of the testator's handwriting alone.—Wood v. Goodlake, 7 Eng. Ec. R. 70; Crisp & Ryder v. Walpole, 4 *ib.* 202; Russell v. Marriatt, 6 *ib.* 268.

5. To make a will, the *animus testandi* must exist; and the fact that this paper was not given into the hands of

any custodian, nor filed away among the valuable papers of the deceased, but was produced to the court torn and defaced, repels the idea that it was intended to operate as a will.

Wm. P. Webb, *contra.*—1. The sustaining of the demurrers to the third and fourth pleas, even if erroneous, did not injure the appellants, because they had the full benefit of the same defense under the issue joined on the first plea.—Dunlap v. Robinson, 28 Ala. 100.

2. These pleas were defective in substance. The facts alleged in the third, taken most strongly against the pleader, do not show a revocation of the will. Revocation is a question of intent. The testator might make and sign the deed, as alleged, without the *animo revocandi;* or the deed might have conveyed only a portion of the property, and the will remained good as to the *residuum.*— 1 Jarman on Wills, 155; Carter v. Thomas, 4 Greenl. 341; Hall v. Humphrey, 9 Pick. 350; Brush v. Brush, 11 Ohio, 287; Beard v. Beard, 3 Atk. 72.

3. The probate of the will, as to the personal estate, was governed by the law in force before the adoption of the Code.—Hoffman v. Hoffman, 26 Ala. 535.

4. Proof of the testator's signature and handwriting was sufficient to authorize the probate of the will.— 1 Stew. 30; 4 Ala. 248; 10 Ala. 982. The English rule, as established by the cases cited by the appellants' counsel, is, "that the ecclesiastical courts will not admit to probate upon a mere preponderance of testimony, where there was conflict and suspicious circumstances." If that rule be held to obtain in this State, it can have no application to this case, because there was no conflict in the evidence. The paper was not so torn, worn, or dilapidated, that it could not be easily read. On the subject of dilapidation and obliteration, see Code, § 1613; 1 Williams on Executors, 129; 22 English Law and Equity Reports, 627.

5. The will was not revoked by the subsequent execution of the deed to Davis and wife. That a deed void at law, or voidable in equity, is not a revocation of a prior

will, see 1 Jarman on Wills, 152, (top, 182). That the will was properly admitted to probate, as to *residuum*, if the deed operated a partial revocation, see 4 Greenl. 341.

STONE, J.—It has been settled in this court, that in a contest as to the validity of a will, if the primary court improperly sustain a demurrer to one of the contestant's pleas, this will afford no ground for the reversal of the case, if the contestant had the full benefit of the same facts under the issues presented by his other pleas.—Dunlap v. Robinson, 28 Ala. 100.

In this case, the contestant, as is shown by the record, had the full benefit on the trial of the facts he would have offered in evidence under the third and fourth pleas ; and, under the authority of the case of Dunlap v. Robinson, *supra*, we deem it unnecessary to pronounce on the validity of those pleas. If the demurrer was improperly sustained, it was, at most, error without injury.—Spivey v. McGehee, 21 Ala. 417 ; Jones v. Graham, 24 Ala. 451 ; Gilmer & Taylor v. City Council of Montgomery, 26 Ala. 665.

This narrows the investigation in this case to two questions : 1st, did the deed of May 9, 1854, operate a revocation of the will ? 2d, is the proof of the execution of the will sufficient to establish it as a will of personal property ?

On the question first above propounded, it may not be out of place to remark, that in England, much critical learning has been displayed on the subject of implied revocations of wills. See a full discussion of this subject in 1 Jarman on Wills, marginal pages 130 to 153. In that country, it seems to be settled that, prior to the year 1837, a will would be impliedly revoked, by a deed which, though operative at law, was impeachable in equity. On the other hand, it was declared that a conveyance which was void at law, on account of the incapacity of the grantor, or for fraud or covin, would not revoke a prior will, which disposed of the property.—See 1 Jarman on Wills, 151–2 ; Simpson v. Walker, 5 Simons, 1.

Our Code has introduced a different rule. It declares, (§ 1602,) that "when any testator, after making his will,

makes any contract for the conveyance of any property devised in such will, and the whole or any part of the purchase-money remains unpaid to such testator at his death, the disposition of the property by such contract is not a revocation of the devise, either at law or equity, unless it clearly appear by the contract, or some other instrument in writing, to be intended as a revocation; and such property passes to such devisee, subject to the same remedies for a specific performance thereof, in favor of the persons entitled thereto, against the person to whom such devise was made, as might be had, in law or equity, against the heirs of the testator, had the same descended to them; and the purchase-money, when recovered by the executor of the testator, must be paid to the devisee of such property."

Section 1603 reads thus: "A charge, or incumbrance, upon any real or personal property, to secure any money, or the performance of any contract, does not operate as a revocation of any devise or bequest of such estate previously executed, unless it appears from the will, or instrument creating such charge or incumbrance, that such was the intention of the testator." See, also, §§ 1604, 1605, 1613.

By these sections, we understand it to be the intention of our legislature, to declare that an alteration of the estate devised or bequeathed does not, *per se*, revoke the will, but that whatever interest remains in the testator passes by the will to his devisee or legatee, unless the intention to revoke expressly appears. Applying this rule to the case before us, we find that a substantial interest remained in the testator; either a large balance of unpaid purchase-money, or, more likely, a right to vacate the deed of May, 1854, on account of fraud in its procurement.

There is another answer to this objection, which authorized the probate of this will, if its execution was sufficiently proved. The will, after an unsuccessful attempt to dispose of the realty, bequeaths the testator's entire slave property, without giving their names or number. There is also a residuary clause, which disposes of all the rest of his estate. The deed only conveys certain lands, and certain designated slaves. Whether the

Powell's Distributees v. Powell's Legatees.

deed conveyed all the slaves owned by the testator, or what composed the rest of his estate, the record does not inform us. We are satisfied that, conceding to the deed full operation according to its terms, the will was proveable on account of this *residuum*.—See Taylor v. Kelly, at the present term.

The only remaining inquiry questions the sufficiency of the proof of the execution of the will. In Hoffman v. Hoffman, 26 Ala. 535, this court, in considering the effect of the Code on wills of personalty, executed before it went into operation, held that, in such case, the fact that the testator died after the Code became operative did not render it necessary that the proof should conform to the requirements of section 1611 of the Code. Under our former statute, a will of personalty was valid without subscribing witnesses, and proof of handwriting was sufficient to admit it to probate.—McGrew v. McGrew, 1 Stew. & Por. 30; Shields v. Alston, 4 Ala. 248; Hilliard v. Binford, 10 Ala. 982.

In this case, we think the proof of the handwriting was sufficient. Four witnesses testify to their belief of the genuineness of the handwriting, and there is no opposing proof. True, the bill of exceptions recites, that the will was in a "dilapidated condition"; but the marks it bore were those of age and careless custody, not of any attempt at its destruction. The entire will was legible. Under these circumstances, we know of no rule of law which will justify us in pronouncing against the validity of the will.

The judgment of the probate court is affirmed.