264 So.2d 484

**Leslie Lee SIMS, as Executor of the Estate of Leslie W. Moore, Deceased**

**v.**

**John L. MOORE, et al.**

**1 Div. 705 and 705–X.**

Supreme Court of Alabama.

June 29, 1972.

Nettles & Cox, Mobile, for appellant and cross-appellee.

Sam W. Pipes, III, Mobile, for appellee and cross-appellant John L. Moore.

J. Edward Thornton, Mobile, for appellees and cross-appellants Pearl M. Couch and Maysie M. Henley.

McCALL, Justice.

This litigation involves the contest of two items of an account, between Leslie Lee Sims, as executor (Sims), and the estate of his decedent, Leslie W. Moore, filed on petition for a final settlement of Sims' administration in the Probate Court of Mobile County, Alabama. The contest was made by three of the testator's heirs at law and next of kin (heirs).

The heirs' contest is that the testator did not bequeath the two items of the account in question to Sims, as he contends, and, there being no general residuary clause in the testator's will, the proceeds of these items descend to his heirs under the laws of descent and distribution.

So much of the decedent's will as needs to be considered in order to decide the two issues here involved reads as follows:

### "ITEM ONE

"I direct that all of my just debts, funeral and burial expenses be paid as soon as practicable after my death, by my Executor, out of the property and assets which I GIVE, DEVISE and BEQUEATH to him.

"I further direct that my said Executor shall pay all the estate taxes and the expense of administering my estate out of that part of my estate which I GIVE, DEVISE and BEQUEATH to him.

### "ITEM TWO

"I GIVE, DEVISE and BEQUEATH to my nephew, Leslie Lee Sims, whom I appoint as Executor of this Will, all of the following described personal and real property of which I may die seized or possess at the time of my death. Out of this property, he shall pay all of my debts, estate taxes and the cost of administering my estate so that the property hereinafter DEVISED and BEQUEATHED to others may be free from the charge for the payment of said items.

"My home in Mobile, Alabama, located at 1806 Springhill Avenue and all contents including all out houses and contents, garage and automobile if I should own one at my death, all of my personal belongings including all bank accounts both savings and checking, also all bonds and stocks;

"My summer home located on the Bay Front between Magnolia Beach and Sweet Water Branch, Mrs. Elliott now lives on the North side and Mrs. Bessie Bales on the South, in the Overton Track. This will include all contents of the house and all buildings on said lot—garage, servant house, pump house and tool room and shed;

"And other property as described below:

\*     \*     \*     \*     \*     \*

" \*   \*   \*   132 acres, more or less bound on the North by Grant Street Road and on the South by Cottage Hill Road."

In addition to cash in a savings account with First Federal Savings and Loan Association of Mobile, at his death the testator had considerable amounts of cash in bank accounts, both savings and checking, in four different banks in Mobile, the First National Bank of Rochester, Minnesota, and the Bank of Shubuta, Mississippi. There were no accounts with other savings and loan associations.

The heirs insist that the legacy of "all of my personal belongings including all bank accounts both savings and checking, also all bonds and stocks" does not include the savings account in the savings and loan association. A construction of the will is necessary to determine what was the intention of the testator in this particular.

Though contained in the same paragraph of Item Two of the will, we do not consider the bequest of "all of my personal belongings" as being influenced by the gift

of the home and all contents at 1806 Springhill Avenue, because the two gifts are separated by the bequest of "garage and automobile if I should own one at my death" and also because the testator's language "including all bank accounts both savings and checking," shows that the testator had in mind personal property of his located elsewhere than at his home, viz., in banking houses.

■■ Standing alone and uninfluenced by a following enumeration, the general words "all of my personal belongings" have a most comprehensive meaning. In ordinary parlance of familiar use by lay, as well as professional, persons, the term "personal property" includes in its signification money, goods, chattels, etc. In re Bruckman's Estate, 195 Pa. 363, 368, 45 A. 1078; Underhill's Law of Wills, § 308 and citations made in note 5 thereto; Bromberg v. McArdle, 172 Ala. 270, 55 So. 805, and the term also includes choses in action. Wilson v. Witt, 215 Ala. 685, 687, 112 So. 222; Boyd v. Selma, 96 Ala. 144, 11 So. 393; Enzor v. Hurt, 76 Ala. 595.

We think "all of my personal belongings" is tantamount, in the instant case, to saying "all of my personal property." Both terms have a broad and comprehensive meaning, sufficient to include money on deposit whether in a bank or in a savings and loan association account. Ford v. Wade, 242 Ky. 18, 45 S.W.2d 818; Goggans v. Simmons, Tex.Civ.App., 319 S.W. 2d 442 (Ref. N.R.E.).

■ The heirs say, however, that the rule, doctrine or principle ejusdem generis applies in this case and works a limitation. Ejusdem generis is a rule that may be utilized in proper instances to restrict the general terms of a bequest by association with words of a narrower import. This rule of law is oftentimes applied as an aid to arrive at the intention of the maker of a will or other instrument where ambiguity exists. In Merchants' National Bank v.

Hubbard, 220 Ala. 372, 375, 125 So. 335, 336, we said:

"* * * If the terms employed warrant, they may be aided by the rule ejusdem generis, which ordinarily limits the meaning of general words and things to the class or enumeration employed. * * *"

■ The prime objective in the construction of any will is to fathom out and reach the testator's true intention, Ralls v. Johnson, 200 Ala. 178, 75 So. 926; Rutland v. Emanuel, 202 Ala. 269, 80 So. 107; Sewell v. Byars, 271 Ala. 148, 122 So.2d 398; Curlee v. Wadsworth, 273 Ala. 196, 136 So.2d 886; Weil v. Converse, 273 Ala. 495, 142 So.2d 245, and, in so doing the cardinal rule is to give the will effect in all its particulars, if that can be done, consistent with the rules of law and public policy.

"* * * [I]n the construction of doubtful clauses in a will, that interpretation is to be adopted if possible which avoids a partial intestacy, unless it clearly appears that the testator intended to die intestate as to part of his property. * * *" 28 R.C.L. 227, § 189 citing numerous cases; 57 Am.Jur., Wills, § 1158, pp. 754–55.

"* * * [G]enerally comprehensive terms of property ought to receive their full operation (unless clearly modified by the context), particularly where to apply the rule ejusdem generis would produce a partial intestacy because of the absence of a residuary clause. * * *" Underhill on the Law of Wills, Vol. 1, § 307, p. 413.

And, in Bromberg v. McArdle, 172 Ala. 270, 55 So. 805, the court, with respect to the rule ejusdem generis and its application, said that the intention of the testator, to be ascertained from the whole instrument, will not suffer sacrifice by adherence, notwithstanding, to the rule stated and the rule must and does yield to the testator's intent gathered from the whole in-

strument, citing Schouler on Wills, § 514; 1 Jarman on Wills, 759.

The heirs argue that "including all bank accounts both savings and checking" are words of limitation upon the phrase "all of my personal belongings," narrowing its meaning under the ejusdem generis rule to things of the same kind, namely, "bank accounts both savings and checking, also all bonds and stocks," and, since a savings and loan account is not a bank account, such account is not included.

Contrary to this argument "including" is not to be regarded as limitational or restrictive, but merely as a particular specification of something to be included or to constitute a part of some other thing, that is, part of "all of my personal belongings." Achelis v. Musgrove, 212 Ala. 47, 50, 101 So. 670. "Including" is not a word of limitation, rather it is a word of enlargement, and in ordinary significance also may imply that something else has been given beyond the general language which precedes it. Achelis v. Musgrove, supra. Here that something else means "bank accounts."

In drawing an analogy, between commercial bank savings accounts and savings accounts in savings and loan associations, where a statute excepted, from taxation, property, held in joint tenancy "bank accounts," the court in Colorado v. Becker, 159 Colo. 562, 413 P.2d 185, said:

"For the purpose of receiving, safeguarding and disposing of the monies entrusted to it by the depositors, the functions of the savings and loan company are so closely parallel with those of a 'commercial' bank that we have no hesitancy in holding that deposits in a savings and loan association, for the purpose of this statute, are within the meaning of the term 'bank account.' We see nothing in comparing these two accounts which would indicate to us that the Legislature intended to distinguish between savings deposits in a 'commercial' bank and those in a savings and loan institution for the purpose of determining the taxable interest which passed."

Generally, deposits in both institutions have the same characteristics.

There is no evidence in the record in this case that the savings account in the savings and loan association is any different, in respects here material, from those accounts in the commercial banks. The fact that the testator applied for a membership and savings account in the association, and that he authorized it by proxy to act for him, of which there was evidence, does not in our opinion differentiate a savings account in that institution from a savings account in the commercial banks. For all practical purposes both types of savings accounts represent a deposit of money in hand, bearing interest.

"* * * 'A deposit' in the bank 'is a transaction peculiar to the banking business, and one that the courts should recognize and deal with according to commercial usage and understanding.' * * *." Wilson v. Witt, 215 Ala. 685, 687, 112 So. 222, 224.

Here "bank accounts both savings and checking" includes the savings account in the First Federal Savings and Loan Association of Mobile.

There is no general residuary clause in this will; and, in none of its items, other than the gifts to Sims in the second, does the testator dispose of any personal property. Each other item of disposition consists only of a devise of separate lots or parcels of real estate, respectively, to two of the testator's nieces and a nephew. This will charges Sims, the executor, who is the legatee and devisee of the gifts of real and personal property under the second item with the duty of paying all debts of the estate, the personal expenses, estate taxes and the expenses of administration of the estate out of these assets bequeathed and devised to him. The testator expressly states in his will that this shall be done so that the property devised and bequeathed to others may be free from the charge for

the payment of those debts and obligations. By expressly exonerating the real property, devised to heirs other than Sims, from those obligations, the sum of the purpose of the testator, to be read from the whole will, was to lay the obligation for the payment of the demands mentioned upon the personal estate, in exemption of the real property from charge therefor, and to that end the bequest was of all of the personal estate to Sims, whom the testator directed to pay and discharge the obligations enumerated. Bromberg v. McArdle, supra. We hold in this case that the testator intended to bequeath all of his personal estate to Sims by his bequest of "all of my personal belongings."

In conclusion we think that the savings account in First Federal Savings and Loan Association passed to Sims under "all of my personal belongings," or, the savings account was within the meaning of the term "bank accounts both savings and checking." ·

■ The heirs next insist that after the testator executed his will, he conveyed the "132 acres, more or less" reserving a vendor's lien to secure the unpaid balance of the purchase money. They argue that the testator's conveyance before his death adeemed this devise, causing the unpaid purchase money to descend to them under the laws of intestacy. The devisee, Sims, insists that by reason of Tit. 61, § 13, Code of Alabama, 1940, the purchase money should be paid to him. That code section reads as follows:

"When any testator, after making his will, makes any contract for the conveyance of any property devised in such will, and the whole or any part of the purchase money remains unpaid to such testator at his death, the disposition of the property by such contract is not a revocation of the devise, at law or in equity, unless it clearly appears by the contract, or some other instrument in writing, to be intended as a revocation; and such property passes to such devisee, subject to the same remedies for a spe-

cific performance thereof in favor of the persons entitled thereto, against the person to whom such devise was made, as might be had at law or in equity against the heirs of the testator, had the same descended to them; and the purchase money, when recovered by the executor of the testator, must be paid to the devisee of such property."

We think that § 13, supra, definitely has application to the facts of this case. In Powell's Distributees v. Powell's Legatees, 30 Ala. 697 (1857), the decedent's will was propounded for probate by his legatees, and contested by his distributees and next of kin. The court after citing what is now §§ 13 and 14 of Tit. 61 of the Code in its opinion, said:

"By these sections, we understand it to be the intention of our legislature, to declare that an alteration of the estate devised or bequeathed does not, per se, revoke the will, but that whatever interest remains in the testator passes by the will to his devisee or legatee, unless the intention to revoke expressly appears. * * *"

The Court then said that applying this rule, they found that a substantial interest remained in the testator; either a large balance of unpaid purchase money, or, more likely, a right to vacate the deed, conveying the subject property, on account of fraud in its procurement. Thus the court was not writing dictum in its opinion, as the heirs now assert, but was making a pertinent holding that in either event, a substantial interest remained in the testator that was capable of being passed under the will, and, one such interest could be a large balance of unpaid purchase money, while more likely, the interest was the right to vacate the deed for fraud.

■ A vendor's lien, expressly reserved, is created by, and dependent on contract— a contract that the land shall be charged with a lien until the purchase money is paid. Kyle v. Bellenger, 79 Ala. 516; City of Eufaula v. Alabama Power Co., 233

Ala. 257, 258, 171 So. 368. "* * * Such a reserved lien is regarded as partaking of the nature of an equitable mortgage. * * *" Cobb v. Stinson, 229 Ala. 78, 155 So. 586, 587; City of Eufaula v. Alabama Power Co., supra; Brannan v. Adams, 202 Ala. 442, 80 So. 826. For the purposes of the instant case, we recognize no material difference between a vendor's lien and a mortgage in their serving as security for a debt. Both are given in return by the grantee as a part of the contract for the conveyance of the property to secure the unpaid balance of purchase money. In Phillips v. Phillips, 213 Ala. 27, 104 So. 234 (1925), after executing his will, the testator deeded property he had devised by will, and took a mortgage to secure the unpaid purchase money. We held that by force of our statute Code § 13, the unpaid purchase money passed to the devisees of the real estate under the previously executed will. The statute declares that the unpaid purchase money shall not be taken out of the operation of the devise unless such intent is clearly expressed by an instrument in writing. The potent language that we adhere to in *Phillips,* supra, is:

"* * * It may be said the statute is written into every devise of lands situate in Alabama, as if to say, on the face of the will, 'I devise this land or any unpaid purchase money due me thereon at my death, to the persons named in the will.' * * *"

The application of Code § 13 is not restricted to contracts to sell property as contended by the heirs. Under the statute, the disposition of property by any contract for its conveyance prevents a revocation of a devise of the property by the testator in his will, and passes the unpaid purchase money to the devisee. This court has so interpreted and applied Code § 13, since Powell's Distributees v. Powell's Legatees, supra (1857).

In Welsh v. Pounders, 36 Ala. 668 (1860), the testatrix executed a will before the adoption of the predecessor section to Code § 13. The testatrix then made a deed, after the statute went into operation, which conveyed the subject land, devised by one clause of the will. The purchase money remained unpaid at the testatrix's death. The contestants insisted that the will was revoked as to the devise of the land by the sale and conveyance thereof. The court said:

"Section 1602 [now § 13] of the Code so clearly defines the effect of the deed, that argument cannot be necessary on the point. It does not appear by the contract evidenced by the deed, or by any other instrument of writing, that the testatrix intended to revoke the devise of the land conveyed by it. It follows, that the clause of the will devising the land is not revoked, and the devisees take under the devise the right specified in section 1602, above referred to. Without farther comment, we refer to Powell's Distributees v. Powell's Legatees, 30 Ala. 697, the decision in which covers all the questions arising in this case."

Slaughter v. Stephens, 81 Ala. 418, 421, 2 So. 145, 147 (1886), affirms what was said in Powell's Distributees v. Powell's Legatees, supra, and Welsh v. Pounders, supra, as to the effect of the statute, Code § 13. There the court said:

"* * * The real contestation rests on the issue of revocation vel non. It is contended, that the testator revoked the will by reason of having sold and conveyed a large portion of his real estate devised, after the making of the will, notwithstanding the greater part of the purchase money was unpaid at the time of his death. Whatever dispositions of property made by a testator after making his will, independent of statute, will operate an implied revocation, our statute has prescribed a clear and well defined rule. It has heretofore been considered and construed in two cases, in each of which it was ruled, that a sale and conveyance of any property devised, after the making of the will, when any part of the purchase money remains unpaid to

the testator at his death, does not operate a revocation of the devise, unless it clearly appears by instrument in writing, that it was intended to be a revocation. —Code, § 2287; Powell's Distributees v. Powell's Legatees, 30 Ala. 697; Welsh v. Pownders (sic), 36 Ala. 668. These decisions have become a rule of property, which should not be distributed."

Noting the provisions in Code § 13 and the decisions in the cases of Powell's Distributees v. Powell's Legatees, supra; Welsh v. Pounders, supra, and Slaughter v. Stephens, supra, the court observed in Scarbrough v. Scarbrough, 176 Ala. 141, 144, 57 So. 820 (1912), that the testator, after devising real property by a clause in his will, sold his undivided interest therein and executed a deed of conveyance to his grantee. The unpaid balance of the purchase money was evidenced by notes. These were secured by a mortgage on the same property conveyed, executed by the grantee-mortgagor to the testator. This balance remained unpaid at the testator's death. Speaking of these facts, which, in part, do not appear in the report of the case, but are found in the original transcript of record, the court said:

"One effect of the statute was and is to avoid the revocation of a will by the simple act of a contract to sell or a sale of the property devised thereby; and another was to substitute, for the property so contracted away by the will maker, the unpaid purchase money therefor, whether it be all or only a part. When recovered by the executor of the testator, the prescription of the statute is that it be paid to the devisee of such property; that is, the devised property that the testator, in life, had sold or contracted to sell."

The court in Scarbrough v. Scarbrough, supra, wrote to similar pertinent facts that the court also wrote to in Phillips v. Phillips, supra, and in these two cases, the contract, as referred to in the statute, was evidenced by a deed. In both cases the court reached a like conclusion, that the statute,

Code § 13, avoided the revocation of the devise, and passed the unpaid purchase money to the devisee named in the will.

Another case on the subject is that of Boise v. Merry, 266 Ala. 286, 96 So.2d 448 (1957). We think the law on this issue is quite well settled by the chronology of cases we have cited and needs no more to be said.

The judgment of the circuit court that the money in the savings account in the First Federal Savings and Loan Association of Mobile, owned by the decedent Leslie W. Moore, at the time of his death, passed to the heirs at law and next of kin of the deceased, is reversed and the cause is remanded with direction to enter a judgment therefore in favor of the legatee, Leslie Lee Sims. The circuit court's judgment is otherwise affirmed.

Affirmed in part, and reversed and remanded in part, with direction.

HEFLIN, C. J., and MERRILL, COLEMAN, HARWOOD and BLOODWORTH, JJ., concur.