365 So.2d 815 (1979)
In re The ESTATE OF Coleman K. LESHER, Deceased.
Coleman R. LESHER, Appellant,
v.
FLORIDA NATIONAL BANK OF GAINESVILLE, Appellee.
No. JJ-373.
District Court of Appeal of Florida, First District.
January 4, 1979.
*816 Michael L. Bryant of Birr, Bryant & Saier, Gainesville, for appellant.
John F. Roscow, III, of Scruggs, Carmichael, Long, Tomlinson, Roscow, Pridgeon, Helpling & Young, Wayne P. Castello, Gainesville, for appellee.
MILLS, Judge.
This appeal concerns the construction of a will, specifically whether a phrase referring to all personal property physically situated within Pennsylvania is ambiguous and requires the introduction of extrinsic evidence to determine the testator's intent.
The personal representative of the Estate of Coleman K. Lesher, Florida National Bank of Gainesville (Bank), filed its petition for distribution and discharge. After setting forth the method of distribution, the petition stated that there was a dispute as to the meaning of Item II of the will. Item II reads as follows:
"I give and bequeath, absolutely and forever, all of the personal property which I may own at the time of my death physically situated within the boundaries of the State of Pennsylvania to my son, Coleman R. Lesher. In addition to my son, Coleman R. Lesher, I give and bequeath all of those of my personal effects, books, jewelry or furniture situate without the confines of the State of Pennsylvania which he may desire and select within two (2) months of the date of my death, such selection to be complete upon his delivery to my Executor of a list of all such personal property that he desires. Should my son predecease me, *817 all such personal property enumerated in this Item shall pass into my residuary estate."
In the residuary clause the testator devised and bequeathed all of the property in the estate, except the property mentioned in Item II, two-thirds to his son and one-third to his friend. The will further provided that if the friend predeceased the testator, her share of the residuary estate would go to the son, and if the son predeceased the testator, the son's share of the estate would pass to his lineal descendants. The will directed the payment of all debts, taxes and expenses from the residuary clause.
Coleman R. Lesher contended that the term "personal property" in the first sentence of Item II referred to both tangible and intangible personal property; the Bank contended that the term encompassed only tangible personal property. The method of distribution set forth in the petition was in accordance with the Bank's interpretation.
Coleman R. Lesher filed an objection to the petition for distribution and discharge and a hearing was held. In its order on the objection, the court determined that a latent ambiguity existed in the phrase "all of the personal property which I may own at the time of my death physically situated within the boundaries of the State of Pennsylvania" and provided for a hearing at which the court would receive extrinsic evidence to enable it to determine the intention of the testator. An evidentiary hearing was held and the court entered its order establishing the intention of testator at the time of execution of his will. Based on the testimony of the attorney who drafted the will and a construction of the first two sentences of Item II, the court determined that the omission of the word "tangible" before "personal property" was an error, and therefore limited the first sentence of Item II to tangible personal property.
It is well established principle that in construing a will, the intent of the testator must be determined and carried out as nearly as possible. Adams v. Vidal, 60 So.2d 545 (Fla. 1952); In Re Estate of Hopkins, 349 So.2d 663 (Fla. 4th DCA 1977). The testator's intention should be determined from the will itself, if possible, and parol evidence may not be resorted to except in the case of ambiguity. In Re Block's Estate, 143 Fla. 163, 196 So. 410 (Fla. 1940); Adams v. Vidal, supra.
In this case the court had to determine whether the testator intended to bequeath to his son all of his tangible personal property physically situated within Pennsylvania or all the intangible and tangible personal property physically situated within Pennsylvania. After examining the will and hearing the arguments of the parties, the court determined that the words "personal property" had no fixed meaning and that the phrase "... may be susceptible to clarification by extrinsic evidence from competent witnesses which may shed some light upon the Testator's intention at the time the will was executed."
In In Re Horne's Estate, 171 So.2d 14 (Fla.2d DCA 1965), the Second District Court of Appeal stated:
"The words `personal effects' or `personal property' when used in a will have no fixed meaning and there `is always a question of the intention of the testator so ascertained from the particular setting in which the phrase appears and the general tenor of the will.' Although the term `personal property' is sufficiently broad in its technical sense to include all forms of property other than interests in land, `in the majority of cases' the courts view the intention of the testator as carrying a restricted meaning not including various species of intangible personality." (Citations omitted)
In construing a will, words should be given their ordinary and usual meaning. Floyd v. Smith, 59 Fla. 485, 51 So. 537 (Fla. 1910); In Re Martin's Estate, 110 So.2d 421 (Fla.2d DCA 1959). However, there is disagreement as to ordinary meaning of the words "personal property". In In Re Chadwick's Estate, 247 Iowa 1050, 78 N.W.2d 31 (Iowa 1958), the Supreme Court of Iowa stated that in its ordinary or popular meaning the term "personal property" included only "goods and chattels, tangible things". *818 Other courts have stated that in its ordinary meaning the term encompasses stocks, bonds, money and choses in action. In Re Lewis' Estate, 407 Pa. 518, 180 A.2d 919 (Pa. 1962); Sims v. Moore, 288 Ala. 630, 264 So.2d 484 (Ala. 1972). An annotation on the subject concluded that while it was difficult and dangerous to make any generalizations, "... normally, and absent any language in the will or testator's circumstances to indicate a contrary intention, a gift of personal property is restricted to tangible chattels, but includes all items falling within that category". 94 A.L.R.2d 1106, 1111 (1964), supplementing 137 A.L.R. 212 (1942).
Here, the "personal property" referred to in Item II is limited to that "physically situated within the boundaries of the State of Pennsylvania". The term "physically situated" would tend to indicate that term "personal property" referred to tangible personal property. The word "intangible" means "incapable of being touched or perceived by touch: not tangible". Webster's Third New International Dictionary (1967). Ordinarily, one does not necessarily think of intangible property or things as being physically situated in any particular place, whereas tangible property, by definition, must be physically located somewhere. Further, when bequests of property have been identified by location, the description of the location has been considered in determining what particular property the testator intended to bequeath or devise.
"Generally speaking, money or other evidences of ownership are held to be included under a gift of property identified by its location if such location is a place where one would normally expect such property to be kept. Thus, a testamentary gift of property identified as being in a safe-deposit box, safe, and even a desk or trunk, has been held to pass money or intangibles found therein... . On the other hand, a testamentary gift of property identified as being in a building ... has usually been held not to pass money or evidences of ownership found therein, on the ground that the testator, in using a description which as a rule does not bring to one's mind the fact that money or other evidences of ownership may be present, did not intent to include such items." 5 A.L.R.3d 466, 548.
In In Re Lunness, [1920] 51 D.L.R. 114 (1919), it was held that the property mentioned in a provision in a will, directing that "any and all of my property situated in the Province of Ontario" be sold and divided among three daughters, included real property in Ontario but did not include shares of stock found in a safe-deposit box in Toronto. The court did not believe that the testator thought of his railroad stock as being "situated" anywhere.
"The idea of a situs attributable to an incorporeal thing probably never crossed his mind, and it is as fallacious for me to suggest that he thought that the Canadian Pacific Railway Company stock was situated in Ontario, because perchance the script was in his strong box in Toronto, as to suggest that he regarded this stock as having situation in the Province of Quebec, because the head office of the railway company was there." 51 D.L.R. at 128, 129.
In construing a will, the intention of the testator should not be determined by isolated words and phrases. The will as a whole should be considered and the testator's general plan or scheme ascertained. Cartinhour v. Houser, 66 So.2d 686 (Fla. 1953). In the case before us, the majority of the estate consists of intangible personal property. There is also tangible personal property located in Pennsylvania. If the appellant's construction of the will were correct, it is possible that the great bulk of the estate would pass under Item II. However, Item II provides that if the son should predecease the testator, the personal property enumerated in Item II would pass into the residuary clause, where one-third would go to Margaret MacLaren and two-thirds to the lineal descendants of the son. Thus, under the appellant's construction of the will, the time of the son's death could greatly effect the amount of property ultimately received by the son's children. It is more logical to assume the testator intended that, should his son predecease him, his grandchildren *819 would receive approximately the same share of the estate as his son would have received. The testator's apparent overall plan, of leaving two-thirds of the bulk of his estate to his son or his son's lineal descendants and one-third to Margaret MacLaren, is effectuated by construing the term "personal property" in Item II to mean tangible personal property.
Because of the numerous and varied meanings of the term "personal property", because of the language limiting the term "personal property" to that "physically situated" in Pennsylvania, and because any determination of the intent of the testator from the terms of the will would be pure conjecture, we do not think that the court erred in finding the phrase in question ambiguous and in hearing testimony from competent disinterested parties on the question of the testator's intent.
The evidence adduced at the hearing clearly and convincingly established that the testator intended the term "personal property" to include only tangible personal property in Pennsylvania. The notes of the testator's attorney and scrivener made contemporaneous with his conference with the testator prior to and for the preparation of his will state that the testator desired that his son receive "jewelry or any furniture which he might desire and select within two months of the date of death, as well as all tangible personal property physically situate at the time of my death in the State of Pennsylvania." A letter from the testator's attorney to the personal representative bank dated two days after the execution of the will states:
"You will notice that the Will specifically provides for all tangible personal property situate within the State of Pennsylvania to go directly to his son, Coleman R. Lesher, so as to avoid expenses in collecting together this property and making ultimate disposition of it."
A copy of this letter was sent to the testator. Further, the scrivener testified that he and the testator discussed the bequest of tangible personal property in Pennsylvania to the testator's son because the testator did not want the corporate executor in Florida to have to go to Pennsylvania and incur the expense of taking possession of the testator's tangible personal property in Pennsylvania.
In its order establishing the intention of the testator, the court stated:
"With the testimony of the scrivener and the other documents, the evidence is clear and convincing to the point of inescapable conviction that the Testator, Coleman K. Lesher, intended at the time of execution of his Will filed herein that the first sentence of Item II should be limited only to `tangible' personal property located in the State of Pennsylvania."
We agree. The order appealed is affirmed.
BOYER, Acting C.J., and ERVIN, J., concur.