JOINER, Judge.
David Wayne Acra appeals the summary dismissal of his petition for postconviction relief filed pursuant to Rule 32, Ala. R.Crim. P. We reverse the judgment of the circuit court and remand this matter for further proceedings.
In June 2009, Acra pleaded guilty to violating the registration requirements of the Community Notification Act (“the CNA”), formerly § 15-20-22, Ala.Code (1975).[1] Acra did not appeal his conviction. In November 2010, this Court in State v. Adams, 91 So.3d 724, 738 (Ala.Crim.App.2010), held:
“[Section] 15-20-22(a)(l) is unconstitutional and we address here two of the reasons: first, the statute violates the guarantee to equal protection under the law as provided in the Fourteenth Amendment to the United States Constitution, and in Article I, §§ 1, 6, and 22, of the Alabama Constitution of 1901 because it resulted in an unreasonable and discriminatory classification based on wealth; and, second, the statute is unconstitutional as applied to the defendant in this case, under the Eighth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, and under Article I, § 15, Ala. Const. 1901, because the requirement in former § 15-20-22(a)(l) that a sex offender provide an ‘actual address at which he or she will reside’ punishes the defendant solely for his status of being homeless and, thus, violates the prohibition against cruel and unusual punishment.”
In May 2011, Acra filed a standard Rule 32 form and attached to it a supplement setting out his detailed claim. Acra indicated on the standard form that he was seeking relief under every subsection of Rule 32.1, Ala. R.Crim. P. In his supplement, Acra argued, among other things,[2] that the trial court
“was without jurisdiction to prosecute him or impose sentence upon him due to [a] lack of constitutionality of the community notification act ... because [Acra] is a homeless[ ] [and] indigent offender who had ended his previous sentence for [first-degree sexual abuse] ... and could not supply his prison custodian a true address in which he would reside due to his homelessness.”
(C. 19-20.) In his petition, Acra raised arguments similar to those raised and addressed in Adams. In its response to Acra’s petition, the State argued that Acra’s petition was precluded, was time-barred, was insufficiently pleaded, and was without merit. (C. 27-32.) The circuit court agreed with the State and summarily dismissed Acra’s petition.
Acra now appeals, arguing that his petition was sufficiently pleaded and that he was entitled to an evidentiary hearing. (Acra’s brief, p. 5.) We agree, concluding that Acra has asserted a ground for relief under Rule 32.1, Ala. R.Crim. P., that his asserted ground for relief is not precluded, and, finally, that Acra is entitled to a hearing on his claim because he has pleaded *464 facts that, if true, would entitle him to relief. We address each issue in turn.
“ ‘The standard of review on appeal in a postconviction proceeding is whether the [circuit court] abused [its] discretion when [it] denied the petition. Ex parte Heaton, 542 So.2d 981 (Ala.1989).’ ” Strickland v. State, 771 So.2d 1123, 1125 (Ala.Crim.App.1999) (quoting Elliott v. State, 601 So.2d 1118, 1119 (Ala.Crim.App.1992)). However, “when the facts are undisputed and an appellate court is presented with pure questions of law, that court’s review in a Rule 32 proceeding is de novo.” Ex parte White, 792 So.2d 1097, 1098 (Ala.2001). In either instance, this Court may affirm the judgment of the circuit court for any reason, even if not for the reason stated by the circuit court.[3] See Reed v. State, 748 So.2d 231 (Ala.Crim.App.1999) (“If the circuit court is correct for any reason, even though it may not be the stated reason, we will not reverse its denial of the petition.”).

I. Grounds for Relief

Rule 32 provides a limited scope of review. Rule 32.1, Ala. R.Crim. P. Specifically, Rule 32.1 permits defendants to “institute proceedings ... to secure relief’ on the following grounds:
“(a) The constitution of the United States or of the State of Alabama requires a new trial, a new sentence proceeding, or other relief.
“(b) The court was without jurisdiction to render judgment or to impose sentence.
“(c) The sentence imposed exceeds the maximum authorized by law or is otherwise not authorized by law.
“(d) The petitioner is being held in custody after the petitioner’s sentence has expired.
“(e) Newly discovered material facts exist which require that the conviction or sentence be vacated by the court....
“(f) The petitioner failed to appeal within the prescribed time from the conviction or sentence itself or from the dismissal or denial of a petition previously filed pursuant to this rule and that failure was without fault on the petitioner’s part.”
As noted above, Acra indicated in his petition that he was seeking relief under every subsection of Rule 32.1, Ala. R.Crim. P.; on appeal, however, Acra asserts only three grounds for relief.
In his first argument, Acra conflates subsections (b) and (c) — that the trial court was without jurisdiction to render judgment or to impose sentence and that Acra’s sentence is illegal. (Acra’s brief, pp. 18-20.) Specifically, Acra argues that Adams “establishes that the trial court was without jurisdiction to render judgment or impose a sentence on [Acra] for violating a statute that is unconstitutional as applied to him” and that Acra is serving an illegal sentence because, he says, according to Adams, the trial court was deprived of jurisdiction to accept Acra’s guilty plea. (Acra’s brief, pp. 18-20.) We agree with the State, however, that Acra’s argument is without merit. Contrary to Acra’s contention, this Court’s holding in Adams does not implicate the jurisdiction of the trial court; instead, this Court in Adams upheld the dismissal of an indictment on the basis that the CNA registration requirement was unconstitutional as applied to Adams, an indigent defendant. Adams, 91 So.3d at 742. Likewise, be *465 cause Acra’s illegal-sentence argument hinges on his contention that Adams implicates the jurisdiction of the trial court, it, too, fails.
As the State asserts in its brief, Acra actually raises a constitutional claim which “falls in Rule 32.1(a)[, Ala. R.Crim. P.].” (State’s brief, pp. 7, 9.) The true nature of Acra’s claim — that his conviction and resulting sentence are unconstitutional — is argued throughout his brief. Specifically, Acra argues as follows:
“Acra was illegally and unconstitutionally convicted under former Ala.Code § 15-20-22(a)(l), and hence denied his guarantee to due process and equal protection under the law as provided in the Fourteenth Amendment of the United States Constitution, and Article I, §§ 1, 6, and 22, of the Alabama Constitution, and his right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, and under Article I, § 15 of the Alabama Constitutional.”
(Acra’s petition, p. 13; see also Acra’s brief, p. 17 (“Consequently, Mr. Acra’s conviction violates his rights to equal protection and due process under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, as well as Article I, §§ 1, 6, and 22, of the Alabama Constitution.”).) We agree with the State that “[djespite Acra’s appellate contention otherwise, in the circuit court Acra raised a constitutional claim” under Rule 32.1(a), Ala. R.Crim. P. (State’s brief, p. 9.) We address Acra’s claim accordingly.

II. Preclusion of Remedy

Having determined that Acra is asserting a constitutional claim under Rule 32.1(a), Ala. R.Crim. P., we next address whether that claim is precluded.
As a threshold matter, we agree with the State that constitutional claims generally are subject to the limitations period imposed by Rule 32.2(c), Ala. R.Crim. P., and that, in this case, Acra’s constitutional claim appears to be untimely under that rule. Acra, however, urges this Court to find that the holding in Adams is retroactive and applies to cases on collateral review.[4] (Acra’s brief, p. 11.) If the holding in Adams applies retroactively to cases on collateral review, Acra is not excluded from relief by the grounds of preclusion set out in Rule 32.2, Ala. R.Crim. P. See generally Ferguson v. State, 13 So.3d 418, 425-33 (Ala.Crim.App.2008) (addressing the retroactivity of caselaw on an issue deemed precluded by the circuit court); Sanders v. State, 815 So.2d 590 (Ala.Crim.App.2001) (holding that because the decision of the United States Supreme Court in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), was not retroactive to cases on collateral review, petitioner’s argument asserting an Apprendi claim in a petition for postcon-viction relief filed pursuant to Rule 32, Ala. R.Crim. P., was without merit). See also 28 U.S.C. § 2244(b)(2)(A) (“A claim presented in a second or successive habeas corpus application ... that was not presented in a prior application shall be dismissed unless — the applicant shows that *466 the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable....”).
The United States Supreme Court has provided a “framework to be used in determining whether a rule announced in [an] opinionf ] should be applied retroactively to judgments in criminal cases that are already final on direct review.” Whorton v. Bockting, 549 U.S. 406, 416, 127 S.Ct. 1173, 167 L.Ed.2d 1 (2007). Using this framework, we first ask whether the rule announced in an opinion is a new rule or whether it is an old rule. “[A]n old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review.” Id. (emphasis added). A new rule, however, may apply to cases on collateral review if “the rule [ ] come[s] within ... the ... exceptions to the general principle that new rules will not be applied on collateral review.” Saffle v. Parks, 494 U.S. 484, 494, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990). Acra argues only that our decision in Adams announced a new rule of constitutional law; accordingly, we must address whether the rule announced in Adams is a new rule, and whether, if it is a new rule, it falls within an exception to the general principle that new rules do not apply retroactively to cases on collateral review.[5]
“In Teague [v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) ], [the United States Supreme Court] defined a new rule as a rule that ‘breaks new ground,’ ‘imposes a new obligation on the States or the Federal Government,’ or was not ‘dictated by precedent existing at the time the defendant’s conviction became final.’ ” Saffle, 494 U.S. at 488. Applying this definition, it is clear that the rule announced in Adams is a “new rule” for the purposes of our retroactivity analysis; as we recognized in Adams, “[w]e ... found no reported case addressing th[e] precise issue [raised by Adams] in Alabama or in any other jurisdiction.” Adams, 91 So.3d at 739. Having concluded that the rule announced in Adams is a new rule, the next step in the Teague framework is to determine whether the new rule announced by Adams falls into an exception to the general principle that a “new rule” does not apply to cases on collateral review.
“A new rule applies retroactively in a collateral proceeding only if (1) the rule is substantive or (2) the rule is a ‘ “watershed rul[e] of criminal procedure” implicating the fundamental fairness and accuracy of the criminal proceeding.’ ” Whorton, 549 U.S. at 416 (quoting Saffle, 494 U.S. at 495, quoting in turn Teague, 489 U.S. at 311). See also Ferguson, 13 So.3d at 429-31 (recognizing the framework established in Teague). In this case, Adams did not announce a rule of criminal procedure; the question, then, is whether Adams announced a substantive rule.
The substantive-rule
“exception permits the retroactive application of a new rule if the rule places a class of private conduct beyond the power of the State to proscribe ... or addresses a substantive categorical guarantee accorded by the Constitution, such as a rule prohibiting a certain category of punishment for a class of defendants because of their status or offense.”
*467 Saffle, 494 U.S. at 494-95 (internal quotation marks and citations omitted). Likewise, this Court in Bush v. State, 92 So.3d 121, 128 (Ala.Crim.App.2009), stated that “[a] new rule can be applied retroactively to cases on collateral review only if [the] rule forbids criminal punishment of certain primary conduct or prohibits a certain category of punishment.” See also Ferguson, 13 So.3d at 430-31.
In Adams, this Court stated:
“Thus, the State has created separate consequences for indigent homeless offenders and for nonindigent homeless offenders. The continued deprivation of liberty following the completion of the sentence for the original sex offense is suffered by those who have no resources . The statutory scheme thus creates a classification based on wealth, depriving a certain class of citizens indefinitely of their liberty as a result of their inability to pay. The law, though not discriminatory on its face, is discriminatory in its application. This discrimination based on wealth, as the United States Supreme Court has held in Griffin and its progeny, is constitutionally fatal. Therefore, the statute as it was written is unconstitutional.
“We are aware, as was the trial court in this case, that the intent of the Alabama Legislature — to protect the public, particularly children, from convicted sex offenders — is a vital goal. The statute the legislature enacted, however, unconstitutionally subjects indigent homeless sex offenders to a denial of their liberty based solely on their inability to pay. The State is not powerless to monitor and track homeless indigent sex offenders, but it must turn to constitutional methods to do so — methods that do not deprive defendants of their liberty based only on their inability to pay, and particularly without a determination that a defendant made efforts to comply with the statute and failed to do so only because he or she was indigent. The State is free to develop many alternative means to avoid the inadvertent wealth classification it has created here and that still satisfy the goal of protecting the public.”
Adams, 91 So.3d at 742 (citations omitted).
Acra asserts, and we agree, that the rule announced in Adams falls within the substantive-rule exception. Specifically, Acra is correct that the holding in Adams — that the former CNA registration requirement was unconstitutional as applied to Adams, who was indigent and homeless, because the provision violated equal-protection principles and the constitutional prohibitions against cruel and unusual punishment — “‘forbids criminal punishment of certain primary conduct or prohibits a certain category of punishment.’ ” (Acra’s brief, p. 13 (quoting Bush, supra)). Adams can be read to prohibit the legislature from criminalizing conduct that arises solely from indigency or, alternatively, can be read to prohibit the legislature from punishing a class of defendants solely because of their indigency. , Saffle, supra.
As determined by the analysis, our holding in Adams is retroactive; accordingly, Aera’s Adams claim is not subject to the preclusions found in Rule 32.2, Ala. R.Crim. P. Ferguson, supra. After having determined that Adams is retroactive, the next step in our Rule 32 analysis is to determine whether Acra is entitled to an evidentiary hearing on his claim.

III. Burden of Pleading

“Rule 32.3 states: ‘The petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief.’” Ex parte Hodges, [Ms. 1100112, Aug. 26, 2011] - So.3d *468 - , - (Ala.2011). With respect to the pleading requirement, the petition “ ‘must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.’ ” Boyd v. State, 913 So.2d 1113, 1125 (Ala.Crim.App.2003) (quoting Rule 32.6, Ala. R.Crim. P.). “ ‘[T]he unrefuted facts set out by the petitioner must be taken as true.’” Chaverst v. State, 517 So.2d 643, 644 (Ala.Crim.App.1987) (Ex parte Floyd, 457 So.2d 961, 962 (Ala.1984)).
Furthermore, ‘“when a petition contains matters which, if true, would entitle the petitioner to relief, an evidentiary hearing must be held.’ ” Ex parte Hodges, — So.3d at - (quoting Ex parte Boatwright, 471 So.2d 1257, 1258 (Ala.1985)).
In his petition, Acra asserted, in relevant part, the following:
“[Acra] was an indigent inmate who had served 7 years of incarceration[ ] within the confines of an Alabama penitentiary, wherein he was precluded from working at gainful employment, or being involved in any work release program. He lost his family as well as his home while serving this sentence. [Acra] could not give the State of Alabama an address to be released to upon the end of his sentence....
[[Image here]]
“David Acra is a homeless and indigent prisoner in an Alabama prison and has been homeless and indigent since his conviction for his crime of [first-degree sexual abuse] in 2002[;] therefore[,] he has no address to provide the State for which he could reside upon his release from prison on or around June 17, 2009, and he has no funds or assets in which he could use to pay for even [ ] temporary housing, and every shelter, re-entry program, or halfway house he corresponded to in order to find shelter either did not accept sex offenders, or charges a deposit to process the application^] Therefore, [Acra] was powerless to meet the mandates of this statute ”
(C. 21.) Notably, the State did not dispute the facts asserted in Acra’s brief (C. 27-32); thus, we must take them as true, Chaverst, supra. The facts asserted by Acra — at least as related to the instant issue — mirror those facts raised by the petitioner in Adams, and we therefore conclude that Acra is entitled to an evidentia-ry hearing because Acra has pleaded facts that, if true, would entitle him to relief.
In light of the foregoing, we conclude that the judgment of the circuit court is due to be reversed and that this matter is due to be remanded to the circuit court for an evidentiary hearing.
REVERSED AND REMANDED.
WINDOM, P.J., and KELLUM and BURKE, JJ., concur. WELCH, J., concurs specially, with opinion.

. The Alabama Legislature in Act No. 2011-640, Ala. Acts 2011, repealed the CNA and replaced it with the Alabama Sex Offender Registration and Community Notification Act, effective July 1, 2011. See § 15-20A-1 et seq., Ala.Code 1975.

. Acra also argued in his petition that "he did not enter into [his] plea knowingly, voluntarily, or intellectually," and that he received ineffective assistance of counsel. (C. 19.) These claims are not, however, presented on appeal and are thus waived. Brownlee v. State, 666 So.2d 91, 93 (Ala.Crim.App.1995).

. This general rule is subject to exceptions not applicable here. See, e.g., Ex parte Clemons, 55 So.3d 348 (Ala.2007).

. The State argues that the issue of the retro-activity of Adams is being raised for the first time on appeal and, thus, should not be considered by this Court. (State's brief, p. 11— 12.) This position, however, is clearly inconsistent with the position taken below. In its response to Acra’s petition, the State asserted that "[Acra] has used Adams ... as the basis of his Rule 32 petition” and argued that Adams was not retroactive. (C. 29.) The issue of retroactivity of Adams was clearly before the circuit court, and this argument is without merit.

. Acra does not argue that Adams announced an "old rule”; thus, we do not address that issue.