PER CURIAM.
Lanice Clifton Bonds pleaded guilty to the charge of being a school employee who engaged in a sex act with a student under the age of 19 years, see § 13A-6-81, Ala. Code 1975. The Houston Circuit Court sentenced Bonds to 10 years’ imprisonment.[1] Bonds appeals his conviction and sentence. We affirm.
In October 2012, Bonds, while on duty as a school-resource officer at Dothan High School, had sex with a 16-year-old female student in his office at the school. In December 2013, Bonds was indicted for violating § 13A-6-81, Ala.Code 1975, which prohibits “a school employee [from] engaging in a sex act ... with a student under the age of 19 years.” Bonds filed a motion to dismiss the indictment, alleging that because he was employed by the City of Dothan as a police officer and was paid by the City, he was not a “school employee” as that term is used in § 13A-6-81, Ala. Code 1975.
At a hearing on the motion to dismiss, Bonds presented testimony from several witnesses. Todd Weeks, the director of personnel for Dothan City Schools, testified that Bonds had not been considered an employee of Dothan City Schools; that Bonds had not been paid as a school-resouree officer by Dothan City Schools; and that when Weeks was employed as a principal in the school system, school-resource officers were considered employees of the City and were not considered employees of the school. Weeks testified that *1272 the school system paid Bonds only if he worked, after regular school hours, providing security for school events.
Anita Walker, principal at Cloverdale Elementary School, testified that Bonds had been a resource officer at her school for two years and that during that time he had been an employee of the police department. Stan Eldridge, principal at Dothan High School, testified that Bonds had been the school-resource officer at the high school, that he had been an employee of the Dothan Police Department at that time, and that he had been paid by the Dothan Police Department.
Delvick McKay, the personnel director for the City of Dothan, testified that the City had paid Bonds as a resource officer. He also stated that school-resource officers were employed by the City of Dothan Police Department and were assigned to schools based on the police chiefs recommendation.
Scott Ruddock, an officer with the Do-than Police Department who had been assigned to the school-resource division for approximately eight years, testified that he was an employee of the Dothan Police Department and that he reported to his sergeant.
Bonds presented as an exhibit a memorandum from the Dothan Chief of Police addressing standard operating procedures for school-resource officers. That memorandum states, in relevant part, that resource officers “are obligated to the Chain of Command of the Dothan Police Department and not to the administration of the school to which they are assigned. However, they will assist the administration whenever possible.” The memorandum further provided that resource officers “are first and foremost law enforcement officers. They are not school disciplinarians. In addition to being mentors to the students, [school-resource officers] will enforce the law.” Finally, the memorandum states that resource officers would not “be assigned duties within the schools such as, but not limited to, lunchroom duty, bus landing duty, or hall monitor.” (C. 85.)
The State presented as an exhibit an agreement between the Dothan Board of Education and the City of Dothan. This document — entitled “Agreement Between the Dothan City Board of Education and the City of Dothan for the School Resource Officer Program” (“the agreement”) — states, in relevant part: “The Do-than Police Department shall furnish law enforcement officers employed by the Department to serve as Police School Resource Officers assigned to public schools in the City of Dothan School District.” (C. 77.) The agreement further states:
“School Resource Officers shall remain employees of the Dothan Police Department and shall not be employees of the Board of Education. The Board of Education and the Police Department acknowledge that the School Resource Officers shall remain responsive to the chain of command of the Dothan Police Department.”
(C. 80.).
The State presented testimony from Sgt. Ronnie Anderson, who stated that he was employed by the Dothan Police Department as a supervisor for school-resource officers. Sgt. Anderson testified that resource officers are employed by the police department and are not school employees. He said that if a police officer wants to be assigned to the resource-officer division, he must submit an application when an opening exists and be interviewed. The applicant who is selected is then assigned within the department as a resource officer, he said. Sgt. Anderson testified that a grant involving the Dothan Board of Education and the City of Dothan *1273 was in place that provided that nine Do-than police officers would be assigned to city schools as resource officers. Under the terms of the grant, Sgt. Anderson testified, the City of Dothan paid the salaries of eight officers, and the Board of Education paid the salary of the officer assigned to PASS Academy, which was identified elsewhere in the record as an “alternative school.” Finally, he testified that Bonds was not assigned to the PASS Academy.
The circuit court denied Bonds’s motion to dismiss. Thereafter, Bonds entered a guilty plea to the charge, reserving his right to appeal the trial court’s ruling on the motion to dismiss.
On appeal, Bonds contends that he was not a school employee as that term is used in § 13A-6-81, Ala.Code 1975. He argues, therdfore, that the circuit court erred in denying his motion to dismiss.
Because this case presents a purely legal question, our standard of review is de novo. See, e.g., Acra v. State, 105 So.3d 460, 464 (Ala.Crim.App.2012). Further, our review of this case is guided by the following:
“‘“In determining the meaning of a statute, this Court looks to the plain meaning of the words as written by the legislature.” DeKalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 275 (Ala.1998).
“ ‘ “ Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.’ ”
“ ‘Blue Cross and Blue Shield of Alabama, Inc. v. Nielsen, 714 So.2d 293, 296 (Ala.1998) (quoting IMED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992)).’ ”
Sanders v. State, 145 So.3d 92, 95-96 (Ala.2013) (quoting City of Prattville v. Corley, 892 So.2d 845, 848 (Ala.2003)).
As noted above, Bonds was convicted for a violation of § 13A-6-81, Ala.Code 1975. That section provides, in relevant part:
“(a) A person commits the crime of a school employee engaging in a sex act or deviant sexual intercourse with a student under the age of 19 years if he or she is a school employee and engages in a sex act or deviant sexual intercourse with a student, regardless of whether the student is male or female. Consent is not a defense to a charge under this section.”
The legislature has not specifically defined “school employee” in the context of § 13A-6-81, but § 13A-6-80 lists persons considered to be “school employees” for purposes of §- 13A-6-81. Section 13A-6-80, Ala.Code 1975, provides: “For purposes of this article, school employee includes a teacher, school administrator, student teacher, safety or resource officer, coach, and other school employee” (emphasis added). Bonds concedes that he was a “resource officer.” (See, e.g., Bonds’s brief, p. 14.(“It cannot be disputed that [Bonds] was a school resource [sic] at Do-than High School.... ”).) Thus, a simple reading of § 13A-6-80 indicates that, because of his position as a “resource officer” assigned to Dothan High School, Bonds was a “school employee” under § 13A-6-81.
In addition to Bonds’s concession that he was a “resource officer,” the evidence presented at the hearing on the motion to dismiss consistently refers to Bonds as a *1274 resource officer or school-resource officer. Even so, Bonds urges this Court to go beyond the language of the relevant statutes and to construe that language in light of the terms of his particular employment arrangement with the Dothan Police Department. Bonds argues that the evidence from the hearing on the motion to dismiss established that he was solely an employee of the Dothan Police Department and not of the Dothan Board of Education or Do-than High School. Under Bonds’s reading of the relevant statutes, his title as a “resource officer” is irrelevant; rather, the relevant inquiry is whether the school was actually responsible for paying his wages and ultimately had the authority to control his job duties as a resource officer.[2]
The first problem with Bonds’s interpretation of the relevant statutes, however, is that, as noted above, his job title— “resource officer” — is specifically included m the list of persons in § 13A-6-80. The phrase “school employee includes” followed by several job titles in § 13A-6-80 indicates a nonexhaustive list of positions the legislature has declared to be “school employees” for purposes of Title 13A, Chapter 6, Article 4A. The examples listed in § 13A-6-80 include positions such as “student teacher” and “coach,” which might not meet a traditional test for employment because, depending on the circumstances, those positions might be volunteer, unpaid, or ultimately not controlled by a particular school’s administration.[3] Accordingly, § 13A-6-80 is a clear expression by the legislature that the term “school employee” in Title 13A, Chapter 6, Article 4A, is not limited to those persons who meet a traditional, technical definition of employment by a school’s administration, such as the definition Bonds urges upon this Court.[4] As the Alabama Supreme Court has stated:
*1275 ‘“In another context, this Court explained that the word “ ‘including1 is not to be regarded as limitational or restrictive, but merely as a particular specification of something to be included or to constitute a part of some other thing.” Sims v. Moore, 288 Ala. 630, 635, 264 So.2d 484, 487 (1972) (emphasis added). “ ‘Including1 is not a word of limitation, rather it is a word of enlargement, and in ordinary significance also may imply that something else has been given beyond the general language which precedes it.” Id. (emphasis added).’ ” ■ ■
Bon Harbor, LLC v. United Bank, 53 So.3d 82, 93 (Ala.2010) (quoting Southeastern Meats of Pelham, Inc. v. City of Birmingham, 895 So.2d 909, 913 (Ala.2004)). Cf. Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 132 (2012) (“[T]he word include does not ordinarily introduce an exhaustive list....”).
The second problem with Bonds’s interpretation is that it renders § 13A-6-80 unnecessary. If a “school employee” is simply a “school employee,” we question why the legislature would deem it necessary to provide examples in § 13A-6-80. Cf. § 13A-1-6, Ala.Code 1975 (“All provisions of this title shall be construed according to the fair import of their terms to promote justice and to effect the objects of the law, including the purposes stated in Section 13A-1-3.”); see also Hatcher v. Diggs, 76 Ala. 189, 193 (1884) (“Some effect must be allowed to every word, or' phrase, and such interpretation adopted, if reasonable, that no word or phrase will be repugnant to any other provision, or be unnecessary and superfluous. Says Lord Coke: ‘The good expositor makes every sentence have its operation to suppress all the mischiefs; he gives effect to every word in the statute; he does not construe it so that any thing should be vain and superfluous, nor yet makes exposition against express words.’ ”).
Adopting Bonds’s interpretation — and rendering § 13A-6-80 superfluous — would lead to yet another problem: Thwarting a manifest purpose of § 13A-6-81. Section 13A-1-3, Ala.Code 1975, provides: “The general purposes of the provisions of this title are: (1) To proscribe conduct that unjustifiably and inexcusably causes or threatens substantial harm to individual and/or public interests.... ” At a minimum, § 13A-6-81 seeks to prevent those persons holding positions of authority or influence at a school from having sex with students. Here, the evidence indicated that Bonds had been a resource officer at multiple schools. He wore his police uniform to his job at the school and worked at special school events.[5] He even had an *1276 office at the school — -where he took the victim in this case and had sex with her on his desk.[6] Bonds’s reading of the relevant statutes would thwart their purpose, and we reject it. Cf. Scalia & Garner, Reading Law 63 (“A textually permissible interpretation that furthers rather than obstructs the document’s purpose should be favored .... The presumption against ineffectiveness ensures that a text’s manifest purpose is furthered, not hindered.”).
The judgment of the circuit court is affirmed.
AFFIRMED.
WINDOM, P.J., and KELLUM, BURKE, and JOINER, JJ., concur. WELCH, J., dissents, with opinion.

. Bonds was also ordered to pay a $2,500 fine, a $1,000 crime-victims-compensation assessment, court costs, and restitution.

.As described above, the evidence Bonds offered in the circuit court in support of his reading of the relevant statutory provisions indicated the following:
• School-resource officers began as employees of the Dothan Police Department and remain employees of the Do-than Police Department;
• The police department assigned police officers to the resource-officer division within the department, and the police chief placed those resource officers in particular schools; and
• Under the agreement between the City and the Board of Education, resource officers remained obligated to their chain of command at the police department and did not report to the Board of Education or the principal of the school to which they were assigned.
We also note, however, that the agreement between the City and the Board of Education includes a provision whereby a school principal may initiate a process to dismiss the resource officer assigned to his or her school. Under this process, the police chief may seek mediation of the dispute, but "[i]f ... the problem cannot be resolved or mediated ... then the School Resource Officer shall be removed from the Program at the school....” (C. 81.).

. The dissenting opinion cites § 13A-6-83, Ala.Code 1975, in support of its reading of "school employee” in § 13A-6-80. We do not read § 13A-6-83, however, as necessarily limiting or qualifying the nonexhaustive list of positions included as “school employees” in § 13A-6-80. Section 13A-6-80 specifically includes positions — such as "student teacher” — that are not, so far as we are aware, subject to being "placed on paid administrative leave” or subject to disciplinary action under the specific statutory provisions mentioned in § 13A-6-83. Cf. § 16-22-4.1, Ala. Code 1975 (requiring certain insurance coverage for both personnel "employed by a local board of education and student teachers”).

. The dissenting opinion states that "[i]n its analysis on this point, the majority has strayed far afield from what it acknowledges is the obligation of this Court — to look to the plain meaning of the words in a statute.” 205 So.3d at 1278 (Welch, J„ dissenting). Further, the dissent states:
"[T]he majority acknowledges that employment has a traditional, i.e., plain, meaning, *1275 and then it expands the meaning to such a point that it allows virtually anyone to be placed under the umbrella of school employment, including persons over whom the school has no authority whatsoever. Not only has the majority needlessly defined a term that already has a plain and ordinary meaning, the definition it crafts is unreasonable.
“If the legislature had intended to include volunteers and those persons over whom a school’s administration had no authority, among others, within the purview of the statute defining school employees, it could have included express language to that effect, but it did not.”
Id. Our reading of the statute, however, “look[s] to the plain meaning of the words in [the] statute,” including the word "including” and, immediately following that word, the nonexhaustive list of positions the legislature has declared to be "school employees” for purposes of Title I3A, Chapter 6, Article 4a.

. In this regard, the "Agreement Between the Dothan City Board of Education and the City of Dothan for the School Resource Officer Program" stated:
"Police School Resource Officers will reaffirm their roles as law enforcement officers by wearing their uniforms unless doing so *1276 would be inappropriate for scheduled school activities. The uniform will also be worn at events where it will enhance the image of the Officers and their ability to perform their duties."
(C. 79.).

. The "Agreement Between the Dothan City Board of Education and the City of Dothan for the School Resource Officer Program” required the following:
“The Board of Education shall provide to the full-time School Resource Officer of each school the following materials and facilities, which are deemed necessary to the performance of the School Resource Officer’s duties:
"A. Access to an air-conditioned and properly lighted private office, which shall contain a telephone, to be used for general business purposes.
[[Image here]]
"C. A desk with drawers, a chair, a work table, filing cabinet, and office supplies.”
(C. 80.).